UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**TARA FOGLEMAN-LAXEY**          **CASE NO.  6:21-CV-03038**

**VERSUS**                       **CHIEF    JUDGE    S.    MAURICE HICKS, JR.**

**JOSH GUILLORY ET AL**          **MAGISTRATE JUDGE PATRICK J. HANNA**

## REPORT AND RECOMMENDATION

Before the Court are motions to dismiss filed by defendants District Attorney Don Landry ("D.A. Landry") and Lt. Lisa Carstens ("Lt. Carstens"). (Rec. Docs. 40, 41).  Plaintiff opposes these motions. (Rec. Doc. 52). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that both motions before the Court be granted in part and denied in part.

## Factual Background

Considering the factual allegations of the complaint, assumed to be true, and what has been represented to be excerpts from Plaintiff's Facebook posts, the Court sets forth the following salient facts. This suit arises from Plaintiff's arrest on August 29, 2020 at a BBQ protest ("Protest") outside the personal residence of the defendant

Lafayette Mayor Josh Guillory ("Mayor" or "Mayor Guillory").[1]  The protest was held approximately one week after the death of Trayford Pellerin ("Pellerin"), a local man, who was shot by officers with the Lafayette Police Department ("LPD") during an armed confrontation outside a convenience store.[2]  Pellerin's death inspired community demonstrations in Lafayette. Plaintiff alleges the protest was planned in response to what she perceived to be the Mayor's unwillingness to address community concerns being raised at that time and was a peaceful attempt at constructive dialogue.[3]

Plaintiff announced her plans for the protest "on the public road near the Mayor's house" via Facebook.[4] In her opposition brief Plaintiff claims she conferred with unnamed attorneys and Carlos Harvin, Chief of Minority Affairs for Lafayette Consolidated Government ("LCG"), all of whom allegedly concluded Plaintiff's planned protest was legal.[5] Mr. Harvin allegedly told Plaintiff that he would work toward facilitating a conversation between Plaintiff and the Mayor.[6]  On the morning of August 29, 2020, Plaintiff shared information about the protest on Facebook Live, again inviting community members to join her at her location near Mayor Guillory's

---

[1]       First Amended Complaint "FAC" (Rec. Doc. 35) at ¶ 7.
[2]       FAC at ¶¶ 4-5.
[3]       FAC at ¶ 4.
[4]       FAC at ¶¶ 39-40.
[5]       Plaintiff's "Omnibus Response in Opposition to Motions to Dismiss Filed by Donald Landry and Lisa Carstens" ("Response") (Rec. Doc. 52-1) at pp. 2-3, 4.
[6]       FAC at ¶ 40.

personal residence.[7] Although Plaintiff alleges that she repeatedly described the protest as "peaceful" and explained that the purpose of the protest was not to "cause trouble,"[8]  she allegedly posted on her Facebook page earlier that day that her intention in staging  the protest in the manner she did was to make Mayor Guillory "uncomfortable," and she told others to message her for his personal address.[9] It is not clear whether Mr. Harvin was made aware of this posting.

Upon arrival, Plaintiff parked her truck on the road in front of Mayor Guillory's home and began broadcasting the protest on Facebook to an estimated 15,000 plus viewers.[10] Pictures included in Plaintiff's original and amending complaint show Plaintiff positioned her BBQ pit directly behind her truck, which was parked along the curb of a residential street, where she began to grill hamburgers and hot dogs.[11] At that point Plaintiff reconnected with her Facebook followers by live streaming the event, "grabbing the attention of 15,000 viewers who were participating in the protest virtually."[12] While on Facebook Live, plaintiff again revealed the address of Mayor Guillory's residence for the thousands of viewers to hear.[13]

---

[7]     FAC at ¶ 42, Rec. Doc. 41-1, p. 6.
[8]     FAC at ¶¶ 45-46.
[9]     Rec. Doc. 41-1, p. 6.
[10]    FAC at ¶ 42. Plaintiff alleges she did not park "in front" of Mayor Guillory's home. Photographs suggest this allegation is perhaps technically accurate but in this Court's view, somewhat disingenuous at best. FAC at ¶¶ 41, 43.
[11]    FAC at ¶ 50.
[12]    FAC at ¶ 42, Rec. Doc. 40-1, p.6.
[13]    Rec. Doc. 40-1, p.1.

A short while after the BBQ protest began, Mr. Harvin arrived.[14] He allegedly explained that his purpose was to mediate a dialogue between the Mayor and three protestors: Plaintiff, Mr. Gerry Monroe, and Mr. Robbie Schooley.[15] Plaintiff recalls that, during this exchange, Mr. Harvin received a telephone call which Mr. Harvin ended with the phrase, "yes, Mr. Mayor."[16]  Plaintiff claims Mr. Harvin left after this call.[17] A television crew also arrived and began interviewing her and her fellow protesters.[18]

After Mr. Harvin's departure, LPD officers, including Lt. Carstens, arrived on the scene and Plaintiff was advised she was obstructing the roadway.[19]  At that point, based on the allegations of the complaint, the gathering of protesters/onlookers had grown to anywhere between at least 16 and 20 people, exclusive of the press, as well as the over 15,000 virtual viewers, presumably all of whom had been made aware of the Mayor's home address by Plaintiff.[20] Plaintiff alleges she told Lt. Carstens she was not "breaking any laws," to which Lt. Carstens allegedly agreed, but then another unidentified "Arresting Officer" stated that it was "in [Plaintiff's] best

---

[14]     FAC at ¶ 47.
[15]     FAC at ¶ 47.
[16]     FAC at ¶ 48.
[17]     FAC at ¶¶ 47-49.
[18]     FAC at ¶¶ 45-46.
[19]     FAC at ¶ 50. Defendant Carstens was formerly employed with LPD as a Lieutenant but has since retired. Transcript (Rec. Doc. 62) at 30:14.
[20]     FAC at ¶ 63; Rec. Doc. 40-1 at p. 1.

interest" to stop the protest.[21] After Plaintiff had been asked to terminate the protest, she chose not to do so  and was arrested by Lt. Carstens and charged with a violation of La. R.S. 14:100.1 (obstruction of a public passageway).[22]  An additional charge for disturbing the peace under La. R.S. § 14:103 was later added.[23]

The "Arresting Officers" removed all of Plaintiff's personal property from her person, including her cell phone, conducted a pat-down search, then handcuffed  her with her hands behind her back and placed her in a patrol car.[24]  Plaintiff was transported to a police station, where she claims she was "handcuffed to a wall".[25] Plaintiff was then moved to Lafayette Parish Correctional Center ("LPCC"), where she was detained for a period of several hours before being released.[26]  Plaintiff claims her detention violated LPCC's COVID intake policy, which limited the detainees LPCC would accept to those who committed violent crimes or posed an imminent threat to the public.[27]  Plaintiff further claims that she was not provided adequate COVID-19 protections during her time in LPCC, despite her notice to

---

[21]     FAC at ¶ 51.
[22]     FAC at ¶ 52.
[23]     FAC at ¶ 54.
[24]     FAC at ¶ 62. The Court notes that Lt. Carstens is specifically identified as a party. The Plaintiff also adds her to the list of "Arresting Officers" in ¶ 52 of the FAC. However, "Arresting Officers" are not identified as parties. Rather, the "Defendant Officers," who are identified as parties, include  in their description "Arresting Officers". This Court will ignore the fictitious "Defendant Officers" and focus on the specific allegation against Lt. Carstens for purposes of this motion.
[25]     FAC at ¶ 64.
[26]     FAC at ¶¶ 65, 71.
[27]     FAC at ¶¶ 72-73, n. 46 citing https://www.theadvertiser.com/story/news/2020/08/13/lafayette-parish-covid-19-changes-jail-decrease-population/3358443001/ .

LPCC staff that she was at increased risk for complications from that disease because of her weight and asthma diagnosis.[28]

For approximately the next five (5) months, Plaintiff claims to have had no further interactions regarding her arrest.  On January 28, 2021 Plaintiff attended a local civic meeting at which Mayor Guillory was speaking.  During the meeting, Plaintiff publicly questioned Mayor Guillory about his COVID-19 policies, specifically those regarding mask mandates.[29]   D. A. Landry filed a Bill of Information against Plaintiff the following day formally charging Plaintiff with violations of La. R.S. §§ 14:100.1 and 103.[30]  Approximately 10 days later, at a February 8, 2021 hearing before District Judge Royal Colbert in the 15th Judicial District Court for the Parish of Lafayette, Plaintiff agreed to sign a civil stay-away order in exchange for the dismissal of both charges with prejudice.[31]  There is no evidence or allegation that Plaintiff's appearance in court was the result of an arrest warrant.

Plaintiff filed suit on August 27, 2021, naming as defendants Mayor Guillory in his individual and official capacities, former chief of police Scott Morgan ("Chief Morgan") in his official capacity, Sheriff Mark Garber ("Sheriff Garber") in his

---

[28]     FAC at ¶¶ 66, 71, 74.
[29]     FAC at ¶ 80.
[30]     FAC at ¶ 16.
[31]     FAC at ¶ 82 citing Exhibit 4 (transcript of 2/8/21 hearing before Judge Colbert) (Rec. Doc. 35-1).

official capacity, D. A. Don Landry ("D.A. Landry") in his individual and official

capacities, and Lafayette City-Parish Consolidated Government ("LCG").[32]

Motions to dismiss were filed in response to Plaintiff's complaint by D.A. Landry,

Scott Morgan, LCG, Mayor Joshua Guillory, and Mark Garber.[33]  Plaintiff filed her

First Amended Complaint on December 9, 2021.  As amended, Plaintiff's complaint

now names:

- **Mayor Guillory** in his individual and official capacities;
- **LCG**
- **Chief Morgan** in his individual capacity;
- **Sheriff Garber** in his individual and official capacities;
- **D.A. Landry** in his individual and official capacities;
- **Lieutenant Lisa Carstens ("Lt. Carstens")** in her individual capacity; and
- **Defendant Officers** John and Jane Does 1 through 10 ("Defendant Officers") in their individual capacities, encompassing "Arresting Officers" present at the scene of the arrest and others who were present at the police station or LPCC.

Plaintiff's amended complaint contains the following fourteen (14) counts:

- **Count 1:** § 1983 claims for violation of Plaintiff's First and Fourteenth

Amendment rights arising from facial or as-applied unconstitutionality of La.

R.S. §§14:100.1 and 103, against all defendants;

---

[32] Rec. Doc. 1 at ¶¶ 15 – 22.
[33] Rec. Docs. 23, 24, 26, 27, 29.

- **Count 2:** claims under Louisiana Constitution Art. I, Sections 7 and 9 against all defendants for violation of Plaintiff's state constitutional rights to free speech, peaceable assembly and government redress against all defendants.

- **Count 3:** § 1983 claims for retaliatory arrest in violation of Plaintiff's First and Fourteenth Amendment rights against Mayor Guillory, Scott Morgan, and "Arresting Officers";

- **Count 4:** § 1983 claims for false arrest and excessive force in violation of Plaintiff's First and Fourteenth Amendment rights against all defendants;

- **Count 5:** claims under Louisiana Constitution Art. I, Sections 2 and 5 for false arrest, excessive force and deprivation of due process against all defendants;

- **Count 6:** *Monell* claims for violation of Plaintiff's First, Fourth and Fourteenth Amendment rights based on allegations of deprivation of free speech, false arrest, excessive force and retaliation against LCG and Sheriff Garber;

- **Count 7:** Louisiana law malicious prosecution claims against Mayor Guillory and D.A. Landry;

- **Count 8:** Louisiana law false arrest and imprisonment claims against the "Arresting Officers" and Defendant Officers;

8

- **Count 9:** Louisiana law abuse of process claims against Mayor Guillory, Chief Morgan, "Arresting Officers", Defendant Officer Does, and D.A. Landry;

- **Count 10:** claims under Louisiana tort law for intentional infliction of emotional distress against Mayor Guillory, Chief Morgan, "Arresting Officers", Defendant Officer Does, Sheriff Garber, and D.A. Landry;

- **Count 11:** claims under Louisiana tort law for negligent Infliction of emotional distress under Louisiana law against Mayor Guillory, Chief Morgan, "Arresting Officers", Defendant Officer Does, Sheriff Garber, and D. A. Landry;

- **Count 12:** claims under Louisiana tort law for negligent hiring, retaining, and supervision against LCG, Chief Morgan, and Sheriff Garber;

- **Count 13:** claims under Louisiana law of vicarious liability against LCG and Sheriff Garber;

- **Count 14:** claims under Louisiana law and § 1983 for failure to intervene in use of excessive force against "Arresting Officers" and Defendant Officer Does.[34]

---

[34] Again, there is no party or parties actually identified as "Arresting Officers" but the "Defendant Officers" includes "arresting Officers". This count illustrates the ambiguity in Plaintiff's pleading. It will be recommended this type of ambiguity be cleaned up by amendment, However, as illustrated below, it will be addressed in the context of the claims against Lt. Carstens.

As is the custom of this Court, all pre-amendment motions to dismiss were denied as moot.[35]  Post-amendment motions to dismiss were filed by D.A. Landry and Lt. Carstens only.[36]  Plaintiff sought and was granted oral argument regarding these two post-amendment motions.[37]  The Court considered no other motions that had been previously filed and denied as moot because no motions besides the two referenced above were filed post-amendment. The transcript of that proceeding is now published in the record of the case.[38]

On September 2, 2021, Plaintiff notified the Louisiana Office of the Attorney General of a facial and "as-applied" constitutional challenge to the statutes in question pursuant to Fed. R. Civ. P. 5.1. The La. OAG has not filed anything in response nor has a certification been issued by the court under 18 U.S.C. 2403(b) and/or Fed. R. Civ. P. 5.1(c).[39]  As set forth below, if this Court's Report and Recommendation is adopted, it is this Court's opinion that no certification needs to be made in conjunction with these pending motions but that a certification be issued given the numerous remaining claims.

---

[35]   Rec. Doc. 56.
[36]   Rec. Docs. 40, 41.
[37]   Rec. Docs. 54, 57.
[38]   Rec. Doc. 62.
[39]   Rec. Doc 4.

## Law and Analysis

### I.      Applicable Standard

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto.[40] When reviewing a motion to dismiss, a district court must also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[41]

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[42] However, conclusory allegations and unwarranted deductions of fact are not accepted as true.[43]  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[44]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[45] The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading

---

[40]      *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir.2004).

[41]      *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir.2011), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[42]      *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

[43]      *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[44]      *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[45]      *Bell Atlantic*, 127 U.S. at 570.

must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[46]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [47]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[48]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49]  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[50] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[51]

---

[46]    *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[47]    *Id., See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[48]    *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[49]    *Ashcroft v. Iqbal*, 556 U.S. at 678.

[50]    *Id.,* at 679.

[51]    *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5ᵗʰ Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5ᵗʰ Cir.2008).

## II.     Issues Presented that are Common to Both Movants

Plaintiff's claims in this suit against these two defendants are born of two events which form the nexus of facts from which all claims by Plaintiff flow: (1) the activities by the Plaintiff leading to her arrest on August 29, 2020, and (2) her formal prosecution for violations of La. R.S. 14:100.1 and 103 on January 29, 2021. Critical to the motions before the court applied to these events is the question of whether Plaintiff's activities in front of Mayor Guillory's home constituted speech that was protected under the First Amendment to the Constitution.

### A. Applicability of *Heck*

The defendants argue in both pending motions that Plaintiff's claims are barred by application of the *Heck* doctrine based on Plaintiff's agreement to the civil stay away order given in exchange for the dismissal of the charges against her.[52] Thus, the applicability (or not) of *Heck* is a threshold matter for resolution.

The *Heck* doctrine dictates that a plaintiff convicted of a crime may not prosecute claims for constitutional violations when such claims arise from the same facts involved in the charge for which plaintiff was convicted unless plaintiff shows "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

---

[52]     *Heck v. Humphries*, 512 U.S. 477 (1994).

13

determination, or called into question by a federal court's issuance of a writ of habeas corpus."[53]   *Heck* bars claims that would call the validity of a plaintiff's prior conviction into question unless plaintiff shows that the conviction has since been otherwise invalidated.  The requirement of invalidation is known as the "favorable termination" requirement and is the subject of the U.S. Supreme Court's recent ruling in *Thompson v. Clark*.[54]   In *Thompson*, the Court considered whether the favorable termination necessary to overcome the *Heck* bar required the prior adjudication end with an affirmative indication of innocence.   Surveying the consensus of malicious prosecution tort law as of 1871, when § 1983 was enacted, the Court determined no affirmative indication of innocence is required.   It is enough, the Court explained, that the adjudication end without a conviction.[55]

In the instant case, charges filed against Plaintiff under La. R.S. §§ 14:100.1 and 103 were dismissed **with prejudice**.  Accordingly, those charges are fully resolved without a conviction.  This Court rejects the argument that Plaintiff participated in a pretrial diversion program such that *Heck* bars her claims in this suit.  Rather, the record before this Court indicates the dismissal of all charges with prejudice was based on Plaintiff's agreement to a civil stay away order and nothing

---

[53]      *Heck*, 512 U.S. at 486-87.
[54]      ____ U.S. ____, 142 S.Ct. 1332, 212 L. Ed. 2d 382 (2022).
[55]      *Thompson*, 142 S.Ct. at 1341.

more.[56]  The stay away order executed among the parties is just that – a civil agreement between the parties – and does not represent a criminal penalty lesser than that which might have been imposed, offered in exchange for a specified plea.[57]  The remedy available to Mayor Guillory should Plaintiff breach the agreement is a civil remedy and would not revive the charges at issue.

Considering the applicability of *Thompson* to the evidence presented, this Court finds *Heck* does not bar any of Plaintiff's § 1983 claims in this case.  *Heck* is applied by state and federal courts to Louisiana law claims and as explained above, acts as a bar to such claims under the same rationale.[58]  Accordingly, this Court also finds that Plaintiff's Louisiana law claims  are not barred by *Heck*.  Therefore, the Court recommends that to the extent the motions of D.A. Landry and Lt. Carstens contend *Heck* bars the plaintiff's claims against them, motions should be denied.

---

[56]     Transcript of 2/8/21 hearing (Rec. Doc. 40-2) at pp. 4-5.
[57]     Civil Stay Away Order (Rec. Doc. 40-3) at p. 1, stating

> …Tara Laxey is ordered to stay away from (at least 100 feet away), and not to harass or disturb JOSH GUILLORY AND FAMILY for 12 months, excluding Town Hall Meetings, City Council Meeting, or any event in his capacity as Mayor-President.  IT IS FURTHER ORDERED that this Civil Stay Away Order is not to be lodged with any state registry and it is by no means considered a protective order.  A violation of this stay away order may subject a party to contempt of court."

[58]     *Price v. City of Bossier*, 841 Fed. Appx. 650, 654 (5th Cir. 2021) citing *Williams v. Harding*, 117 So.3d 187, 190-91 (La. App. 1 Cir. 4/26/13).

## B. Whether the Activities of Plaintiff in Front of the Mayor's Home Constitute Speech Protected by the First Amendment

Although Plaintiff is correct that the First Amendment protects "peaceful picketing in public streets[,]" municipalities and states may lawfully limit this protection as to time, place, and manner, as long as such limitation is content neutral.[59] It is firmly established that public streets are "archetypes" of public fora. Moreover, the argument that streets lose their public character when they are found in residential neighborhoods has been roundly rejected by the U.S. Supreme Court.[60]

In *Carey v. Brown*,[61] the U.S. Supreme Court considered the constitutionality of an Illinois statute that prohibited picketing at residences or dwellings but exempted peaceful picketing of any place of employment involved in a labor dispute. Picketers in Chicago staged an undisputedly peaceful protest outside the home of Chicago Mayor Michael Bilandic in response to Bilandic's failure to support the bussing of schoolchildren as a remedy to racial segregation in Chicago schools. Citing prior rulings addressed to the point, the Court reiterated that

> '[w]herever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes

---

[59]     *Frisby v. Schultz*, 487 U.S. 474, 479 (1980) quoting *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 799 (1985) ("Of course, '[e]ven protected speech is not equally permissible in all places and at all times.'").
[60]     *Id.*, at 480, citing *Carey v. Brown*, 447 U.S. 455, 460-61 (1980).
[61]     447 U.S. 455 (1980).

of assembly, communicating thoughts between citizens, and discussing public questions.'[62]

After affirming that picketing on public streets is indeed the exercise of First Amendment rights, the Court invalidated the statute at issue because it found the exemption granted to labor protests under the statute violative of the Equal Protection Clause.

Eight years later, in *Frisby v. Schultz*,[63] the Court returned to the issue of picketing on public streets to consider the constitutionality of a municipal ordinance prohibiting picketing "before or about the residence or dwelling of any individual[.]"[64]  In *Frisby*, the protests at issue were focused on the residence of a physician in Brookfield, Wisconsin who drew the ire of anti-abortion activists for his provision of abortion services at several local clinics.  The protests were orderly, peaceful, and featured between one (1) and more than forty (40) participants whose presence did not lead to citations for obstruction of streets or disturbing the peace.

The Court identified three types of fora at which protected speech may be exercised, each carrying with them differing permissible restrictions: (1) the traditional public forum, (2) the public forum created by government designation, and (3) the nonpublic forum.[65]  The Court found that the appellees sought to exercise

---

[62]      *Id.* at 460 citing *Hague v. CIO*, 307 US. 496, 515 (1939).
[63]      487 U.S. 474 (1988).
[64]      *Id.* at 477 citing municipal ordinance of the town of Brookfield, Wisconsin.
[65]      *Id.*, at 479-80 quoting *Cornelius*, 473 U.S. at 802.

protected speech on public streets, which required that restrictions imposed on such conduct be subjected to strict scrutiny.

Strict scrutiny analysis permits that

> '[t]he State may…enforce regulation of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'[66]

The Court cited prior rulings which acknowledged the special status enjoyed by a citizen's home and found that picketing narrowly directed to a household was undertaken for the purpose of "intruding upon the targeted resident, and to do so in an especially offensive way" because it relegates an unwilling targeted listener to the role of a captive audience.[67]   Based on this reasoning, the Court held that the State had a "substantial and justifiable interest" in banning targeted picketing, so long as any such ordinances were content neutral and narrowly tailored.  The Court upheld the validity of the Brookfield ordinance under these parameters.

The Court notes neither party asserts the existence of a dedicated anti-picketing provision under Louisiana or municipal law.  The Court is similarly unaware of any such provision.  However, applying the many salient points of *Casey*

---

[66]    *Id.* at 481 quoting *Perry Education Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45 (1983).
[67]    *Frisby*, 487 U.S. at 486.  See also, *Erznoznik v. Jacksonville*, 422 U.S. 205, 210-11 n. 6 (1975) ("it may not be the content of the speech, as much as the deliberate 'verbal or visual assault,' that justifies proscription"); *Rowan v. United States Post Office Dept.*, 397 U.S. 728, 738 (1970) (the right to avoid unwanted speech has special strength in the privacy of one's own home).

and *Frisby* to the issue before this Court, notwithstanding the absence of any ordinance or law specifically dealing with targeted picketing, this Court must conclude that Plaintiff's claims against D.A. Landry, as well as Lt. Carstens, fail to allege the violation of a First Amendment constitutional right.

In *Tompkins v. Cyr,* the Fifth Circuit addressed the concept of targeted picketing where there was no ordinance or law banning it.[68] Admittedly, the facts of *Tompkins* are far more egregious than those in the instance case, however, the point of law is nonetheless clear. Marching through a neighborhood in protest is protected speech, however targeting and picketing a specific home is not, and therefore, it is "an unlawful activity". [69]

Plaintiff's complaint establishes that she organized and publicized what constitutes a targeted picketing of Mayor Guillory's residence for the purpose of sharing her views regarding Pellerin's death and related subjects upon Mayor Guillory on order to make him "uncomfortable" in his home.  Had Plaintiff chosen a different venue for her protest, the result in this case might be different, as the same precedents clearly establish Plaintiff's right to use public streets and other fora for the exercise of peaceful, protected speech.

---

[68]    *Tompkins v. Cyr*, 202 F.3d 770 (5th Cir. 2000) (targeted picketing in Texas, which does not have a dedicated anti-picketing law, is still "unlawful activity").
[69]    *Id.,* 770 F3d at HN 10, 780 n. 4 citing  *NAACP v. Claiborne Hardware Co.*  458 U.S. 886, 918, (1982), and *Frisby* 487 U.S. at 479-488.

However, as illustrated in *Casey*, *Frisby*, and the cases cited therein, the U.S. Constitution does not convey to Plaintiff the right to exercise what might otherwise be protected speech in the form of targeted picketing at the Mayor's personal residence. Plaintiff's decision to engage in the targeted picketing of the Mayor's residence is fatal to her claims against D.A. Landry and Lt. Carstens.  Therefore, to the extent Plaintiff's claims are based on retaliation for the underlying alleged Constitutional violations of her First and Fourteenth Amendment rights during the activities at the time of the protest, those claims must fail and should be dismissed. The Court specifically recognizes, and discusses below, whether there was probable cause for the arrest under La. R.S 14:100.1 and 103 as a separate issue.

Similarly, any Louisiana law claims brought under Article I, Sections 7 and 9 of the Louisiana Constitution should also be dismissed, since the protections offered under Louisiana's Constitution as to free speech and due process mirror that of the federal constitution and are subject to the same analysis.[70]

---

[70]     *Haney v. Roberts*, 846 F.3d 795, 801 n. 2 (5th Cir. 2017); *Cripps v. La. Dep't. of Agric. & Forestry*, 819 F.3d 221, 231 (5th Cir. 2016).

## III. The Claims against D.A Landry, Individually and in his Official Capacity

### A. Prosecutorial Immunity for Malicious Prosecution

D.A. Landry asserts prosecutorial immunity as to all individual capacity claims against him by Plaintiff.[71]   The foundations of absolute prosecutorial immunity are derived from the immunity afforded judges and grand jurors.  In *Imbler v. Pachtman*, the U.S. Supreme Court reasoned,

> "[t]o be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest."[72]

Immunity from a §1983 suit covers actions taken by a prosecutor in initiating prosecutions and presenting a criminal case on behalf of a state[73].  This immunity also extends to actions taken by a prosecutor that are "intimately associated with the judicial phase of the criminal process" outside of a criminal trial.[74]  Among the traditional functions of a prosecutor is the duty to decide which charges to bring, the decision to file the charging documents, the preparation of those documents and

---

[71]   Rec. Doc. 40 at pp. 4-9.
[72]   424 U.S. 409, 427 (1976).
[73]   *Id.*, at 430-431.
[74]   *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016) quoting *Imbler* at 424 U.S. 430..

whether to pursue a conviction in court.[75] The Fifth Circuit also recognizes that absolute immunity shelters prosecutors, even when they act maliciously.[76]

Prosecutorial immunity is not available for official capacity claims against a District Attorney, since such claims are generally regarded as another way of stating a claim against the entity that defendant represents, namely the Office of the District Attorney.[77]  Plaintiff asserts claims against D.A. Landry in both his individual and official capacities.[78]  Thus the Court begins by addressing Plaintiff's individual capacity claims against this defendant.

Plaintiff was arrested on August 29, 2020 but was not formally charged by the District Attorney in a Bill of Information until January 29, 2021, the day following a public interaction with Mayor Guillory at which Plaintiff asserts the Mayor recognized her as the organizer of the BBQ protest.[79]

Plaintiff argues that D.A. Landry is not entitled to prosecutorial immunity because established procedures within the Fifteenth Judicial District dictate that prosecutions of misdemeanors such as those at issue here are delegated to the City

---

[75]     *Kalina v. Fletcher*, 522 U.S. 118, 125, 129 (1997).
[76]     *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991)(citing *Rykers v. Alford*, 832 F.2d 895 (5th Cir.1987)).
[77]     *Monell v. New York City Dep't. of Soc. Serv., of City of New York*, 436 U.S. 658, 691 n. 55 (1978); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) citing *McMillian v. Monroe Cty, Ala.*, 520 U.S. 781, 785 (1997).
[78]     FAC at ¶ 25.
[79]     FAC at ¶ 80-81. Although arguably untimely as cited by Plaintiff (Rec. Doc. 52-1, p. 18, fn. 11.), this technical defense was mooted by the dismissal obtained in exchange for the stay away order executed approximately 10 days later at Plaintiff's initial court appearance, and consequently, does not factor into the absolute immunity analysis.

Prosecutor and are tried in municipal courts.[80]  Plaintiff cites websites belonging to both the LCG Legal Department and D.A. Landry reflecting the procedure.[81]  For purposes of this Rule 12(b)(6) analysis, the Court assumes without deciding that D. A. Landry's prosecution of the claims against Plaintiff in the Fifteenth Judicial District Court did not follow that procedure.

Notwithstanding that assumption, La. Const. Art. 5, Sec. 26 vests complete discretion over criminal prosecutions in the District Attorney of each judicial district, such that decisions regarding whether and whom to prosecute lie exclusively with the District Attorney.[82]  A District Attorney's broad discretion regarding criminal prosecutions is also echoed in La. C. Cr. P. 61 and La. R.S. 16:1(B).  Taking the allegations of Plaintiff's complaint as true for these purposes, this Court finds that Plaintiff fails to state a claim upon which relief may be granted against D.A. Landry in his individual capacity.  All individual capacity claims against D. A. Landry under §1983 based on the filing of the Bill of Information arise from the exercise of his discretion under Louisiana's constitution and laws to institute a prosecution.  As such, Plaintiff's federal individual capacity claims under § 1983 against this

---

[80]    Rec. Doc. 52-1 at pp. 18-20.
[81]    *Id.*    at    pp.    19-20    citing    https://lafayette.gov/legal/default    and http://districtattorney15thjdc.org/prosecution/traffic-tickets.  The Court notes that Plaintiff was not charged with any traffic offense under Title 32 of Louisiana's Revised Statutes and was, instead, charged with two offenses under Title 14, which are misdemeanors under the Louisiana Criminal Code.

[82]    *Bd. of Com'rs. of Orleans Levee Dist. v. Connick*, 654 So.2d 1073, 1077 (La. 1995); *State v. Dawson*, 316 So.3d 77, 83 (La. App. 1 Cir. 11/17/20).

defendant should be dismissed based on the application of prosecutorial immunity.[83]

Similarly, D. A. Landry is absolutely immune from suit in his individual capacity as to state law claims for malicious prosecution based on the same exercise of prosecutorial discretion and all such claims should also be dismissed.[84]

### B. *Monell* **claims against District Attorney's Office**

Plaintiff's official capacity § 1983 claims against D.A. Landry are viewed as claims against the agency this defendant represents: the District Attorney's office.[85] To succeed on a *Monell* claim against a local government entity, Plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.[86]  An official policy exists when: (1) the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) "where no rule has been announced as 'policy' but the federal law has been violated by an act of the policymaker itself,"; and (3) "even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents

---

[83]     *Imbler*, 424 U.S. at 430; *Singleton*, 956 F.3d at 780.

[84]     *Price v. City of Bossier*, 841 Fed. Appx. 650, 654 n. 4 (5th Cir. 2021); *Burge*, 187 F.3d at 466; *Knapper v. Connick*, 681 So.2d 944 (La. 1996).

[85]     *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Monell v Dept. of Social Services*, 436 U.S. 658, 691 (1978).

[86]     *Arnone v. County of Dallas County, Texas*, 29 F.4th 262, 265-66 (5th Cir. 2022) quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc) (citation omitted).

of the government is 'so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker…can reasonably be said to have been deliberately indifferent to the need.'"[87]

Plaintiff's claims against the Office of the District Attorney relate solely to her formal prosecution by the filing of the Bill of Information on January 29, 2021, approximately five months after her arrest, (1) allegedly at the behest of Mayor Guillory and (2) as retaliation for her exercise of Free Speech at both the protest and the civic meeting. Plaintiff alleges in conclusory fashion without any factual support that the filing of the Bill of Information violated her First, Fourth, and Fourteenth Amendment rights by operation of the official policy or custom of the Office of the District Attorney in maliciously prosecuting alleged crimes in the absence of probable cause.[88]   Such conclusory statements have long been recognized as insufficient to support a *Monell* claim, rather they must contain specific facts.[89]

Plaintiff further tries to bootstrap an alleged " de facto" policy of LCG and/or Mayor Guillory that was allegedly adopted by the District Attorney.  This allegation is meritless as there is no factual support that the Office of the District Attorney had some history of participating in the use of prosecutions to charge otherwise peaceful

---

[87]    *Board of Cnty. Commissioners of Bryan Cnty. v. Brown*, 520 U.S. 397, 417-19 (1997) (internal citations omitted).
[88]    FAC at ¶¶ 164-172.
[89]    *Spiller v. City of Texas Cit Police Dept.,* 130 F.3d 162, 167 (5th Cir. 1997); *Ferguson v. Gates,* 3:21-cv-1104, 2022 WL 1508968, at 3 (W.D. La. May 12, 2022).

protesters.  Therefore, Plaintiff fails to state a claim for which relief can be granted against the District Attorney in his official capacity on that basis alone. However, the analysis does not necessarily end there.

The U.S. Constitution does not include a "freestanding" right to be free from malicious prosecution.[90]   To state a *Monell* claim under § 1983, Plaintiff must therefore allege facts showing an underlying constitutional violation.  "[W]ithout a predicate constitutional violation, there can be no *Monell* liability."[91]   Having already found there was no First Amendment violation, the Court addresses whether there was probable cause for the arrest of Plaintiff on the charges made, i.e. whether there was a Fourth Amendment violation.

Plaintiff alleges she was prosecuted without probable cause to believe she violated La. R.S. §§ 14:100.1 and 103.  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity."[92]  . Probable cause for a warrantless arrest exists when the facts known to the arresting officer at the time of arrest "are sufficient for a reasonable person to

---

[90]     *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) quoting *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc).
[91]     *Loftin v. City of Prentiss, Ms.* 33 F.4th 774, 783 citing *Garza v. Escobar*, 972 F3d 721, 734 (5th Cir. 2020 (citing *Hicks-Fields v. Harris Cty.*, 860 F3d 803,808 (5th Cir. 2017).
[92]     *Loftin v. City of Prentiss,*, supra, at 780, quoting *Illinois v. Gates*, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 2335 n. 13 (1983).

conclude that the suspect had committed, or was in the process of committing, an offense."[93]

La. R.S. 14:100.1 provides in pertinent part:

No person shall willfully obstruct the free, convenient, and normal use of any public sidewalk, street, highway, bridge, alley, road or other passageway . . . by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein.

La. R.S. 14:103 provides in pertinent part:

A.  Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

…

Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent of deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or

…

Holding of any unlawful assembly…

Whether a reasonable officer would have reason to believe there was a "probability or substantial chance of criminal activity" based on the historical facts

---

[93]        *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (*en banc*); *Accord Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) citing *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

that existed at the time is not without doubt. The specific facts alleged are that Plaintiff, during a difficult period in the city of Lafayette following the tragic death of Mr. Pellerin, appeared in front of the Mayor's personal residence, uninvited by the Mayor, while his family was inside.[94] Plaintiff unloaded a barbecue pit in front of his home and began to "tailgate" with literally thousands of virtual onlookers with whom she shared his address.[95] She also invited others to attend with her at the Mayor's residence ostensibly to make him "uncomfortable."[96] Also physically present were other strangers, if not to the Mayor then to his family members and neighbors, and the size of the gathering was growing as law enforcement officers arrived. When advised by law enforcement that it would be in her best interest to discontinue the activity, Plaintiff did not accede to the request that she cease her activities, nor does Plaintiff allege that she had any type of permit to continue her activity on a streetside curb in a residential subdivision in front of private property.

Plaintiff repeatedly describes the actions in front of the Mayor's personal residence as a "peaceful protest." Current events widely reported in the news media at the time illustrate "peaceful protests" were a conclusory description that included varying degrees of unrest and even violence against people and property – both public and private – on a nearly nationwide basis. Courts assessing probable cause

---

[94]   FAC at ¶¶ 44, 60.
[95]   *Id.* at ¶¶ 3, 40, 42.
[96]   Rec. Doc. 41-1 at p. 6.

for an arrest must view the facts within the ambit of the totality of the circumstances. The totality of the circumstances presented to officers on the scene reasonably includes not only Plaintiff's own actions, but also consideration of the surrounding events, public sentiment and, as Plaintiff alleges, air of unrest among citizens.[97]

Jurisprudence demonstrates that total obstruction of a passage is not required for a valid arrest under La. R.S. § 14:100.1[98]    Against the historical factual background that existed at the time, law enforcement officers encountered a group of protesters, one of whom was willfully conducting a barbecue on the street in front of a private residence, in an effort to attract more strangers (whether virtual or otherwise) in order to make the Mayor uncomfortable.  At the moment the group began growing, and the thousands of virtual onlookers became known, the circumstances changed from just one person with a barbecue pit to something quite

---

[97]      *District of Columbia v. Wesby*, _____ U.S. _____, 138 S.Ct. 577, 588, 199 L.Ed.2d. 453 (2018) citing *Maryland v. Pringle*, 540 U.S. 360 (2003); *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

[98]      Re: La. R.S. 100.1: *United States v. Williams*, 2016 WL 6469300 (M.D. La. 2016) (officer's observation of vehicle backing into driveway was sufficient, even accepting that the "obstruction" was brief, to constitute probable cause for investigatory stop); *State v. Kinard*, 105 So.3d 974, 975 (La. App. 5 Cir. 11/27/12) (presence of vehicle in the middle of the street constituted probable cause for an ensuing investigatory stop); *State v. White*, 2010 WL 2179723 (La. App. 3 Cir. 6/2/10) (officer's observation of defendant leaning into an illegally parked car created probable cause for defendant's arrest under La. R.S. 100.1); *State v. Thomas*, 829 So.2d 1137 (La. App. 3 Cir. 10/30/02) (officer's observation of truck idling in the street with passenger door open constituted reasonable suspicion that "the public passageway was, or was about to be obstructed" and created reasonable basis for investigatory stop); *Louisiana v. Barnard*, 847 So.2d 99 (La.App.2 Cir. 5/14/03) (rejecting argument that no actual obstruction occurred and, thus, officer had no probable cause for defendant's arrest); Re: La. R.S. 103: *Garner v. State of La.*, 368 U.S. 157, 166-67 (1961) (conduct which is "violent or boisterous in itself or which is provocative in the sense that it induces a foreseeable physical disturbance" is required under the statute's "foreseeably disturb or alarm the public" provision). Compare, *State v. Lindsay*, 388 So.2d 781 (La. 1980) (finding no threat of public alarm or disturbance sufficient to create probable cause).

different.  Most importantly, when the plaintiff was asked to cease her effort to encourage the growing gathering she refused.  While there may be room for a difference of opinion, as there often is in cases of the determination of probable cause, one cannot say a reasonable officer could not have concluded that there was a "probability or substantial chance" of a violation of La. R.S. 14:100.1.

Similarly, valid arrests for disturbing the peace may be based on conduct that "would foreseeably disturb or alarm the public."[99]  Plaintiff's admitted attempt to stage a targeted picketing of Mayor Guillory's residence, with the invitation to thousands to join her, makes it foreseeable that the Mayor's family would be disturbed by any member of the growing group immediately in front of their home (virtually or otherwise) making any noise or exclamation in their presence and hearing with the intent of annoying them.  Again, Plaintiff does not allege she or any member of her group had been invited or given permission by the Mayor or his family to be there in the ultimate manner that was displayed at the time of the arrest.

This Court finds that, based on the specific facts as alleged, there are reasonable grounds to conclude probable cause existed for the arrest and prosecution for the crimes charged, and therefore, Plaintiff has failed to meet her burden of

---

[99]     *State v. Stowe*, 635 So.2d 168, 172 n. 3 (La. 1994):  probable cause for an arrest under 103(A)(3) requires not only proof of intoxication (at the time of arrest), but <u>also the likelihood that the public will be endangered or disturbed</u>.  *Compare*, *State v. Lindsay*, 388 So.2d 781 (La. 1980) (finding no threat of public alarm or disturbance sufficient to create probable cause).

establishing a predicate Constitutional violation under the First, Fourth or Fourteenth Amendment. Therefore, Plaintiff's *Monell* claim against the Office of the District Attorney for malicious prosecution is unavailable under § 1983 and it is recommended that claim be dismissed.[100]

### D. Louisiana law abuse of process claims

Count 9 of Plaintiff's First Amended Complaint asserts a Louisiana law abuse of process claim against D.A. Landry.  To properly state a claim for abuse of process under Louisiana law, Plaintiff must show: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.[101]  Plaintiff's purported abuse of process claim fails to allege sufficient facts in support of these elements.  Plaintiff's amended complaint alleges D. A. Landry instituted Plaintiff's prosecution at the behest of Mayor Guillory.  Plaintiff's theory is supported by the temporal proximity to Plaintiff's public confrontation with Mayor Guillory, as well as the absence of any prior efforts to institute formal charges against Plaintiff in the preceding five (5) months.  The Louisiana Fifth Circuit Court of Appeal differentiated abuse of process claims from those of malicious

---

[100]    *Cuadra v. Houston Indep. School Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) citing *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994).
[101]    *Deboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citations omitted).

prosecution, reminding that abuse of process contemplates the use of a process **after it has already begun**.[102]

In this case, Plaintiff claims only that D. A. Landry instituted the process.  The record demonstrates no trial was conducted in this case and the case was dismissed with prejudice after the execution of an agreed upon stay away order approximately 10 days later at the initial court appearance by Plaintiff. The institution of the prosecution comprises the entirety of the alleged offense by this defendant. Thus, Plaintiff fails to allege facts sufficient to support a claim for abuse of process under Louisiana law and such claim against D. A. Landry in his individual and official capacities should be dismissed.

The Court notes that, to the extent Plaintiff seeks to assert a claim against D. A. Landry for abuse of process via 42 U.S.C. § 1983 (which is not apparent in the complaint), such claim also fails as a matter of law.  As is true of malicious prosecution, there is no freestanding federal constitutional right to be free from abuse of process.[103]

---

[102]    *Almerico v. Dale*, 927 So.2d 586, 594 (La. App. 5 Cir. 2006); *Id.* citing *Succession of Cutrer v. Curtis*, 341 So.2d 1209, 1214 (La. App. 1 Cir. 1976).
[103]    *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) citing *Morgan v. Chapman*, 969 F.3d 238, 246-46 (5th Cir. 2020).

### E. Louisiana law of Intentional and Negligent Infliction of Emotional Distress

Count 10 alleges an intentional infliction of emotional distress ("IIED") claim against D.A. Landry based on his decision to formally charge Plaintiff.  To state a claim for IIED, Plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by Plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[104]  "Extreme and outrageous conduct" is further described as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[105]  "It is not enough that the defendant has acted with intent which is tortuous, or that he maliciously intended to inflict emotional distress."[106]

There are no factual allegations whatsoever that would support such a claim against D.A. Landry based on the filing of the Bill of Information.  The Bill of Information was filed on January 28, 2021. No arrest warrant was alleged to have been issued. When Plaintiff appeared approximately 10 days later the case was dismissed with prejudice.

---

[104]     *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).
[105]     *Id.*
[106]     *James v. Woods*, No. 14-CV-216, 21 F.Supp.3d 644, 649 (E.D. La.  5/12/14) citing *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 2000).

Discounting the conclusory allegations, as the Court must, the complaint as amended, fails to state a claim for intentional infliction of emotional distress. Furthermore, any such claim against D. A. Landry in his individual capacity would be barred by absolute prosecutorial immunity. Therefore, it is recommended that this claim be dismissed.

Louisiana law does not recognize an independent tort of negligent infliction of emotional distress ("NIED") but does recognize such claim as an adjunct to a negligence claim.   Specifically, a plaintiff must demonstrate all the requisite elements of a general negligence claim under La. Civ. C. Art. 2315:

(1)   the defendant had a duty to conform his or her conduct to a specific standard of care;

(2)   the defendant failed to conform his or her conduct to the appropriate standard;

(3)   the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries;

(4)   the defendant's substandard conduct was a legal cause of the plaintiff's injuries;

(5)   the plaintiff suffered actual damages.[107]

The plaintiff does not allege sufficient facts to state a claim against D.A. Landry for this claim either. Furthermore, to the extent such a claim is sufficiently alleged, it would also be barred by the application of prosecutorial immunity.

---

[107]    *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1086 (La. 2009) citing *Davis v. Witt*, 851 So.2d 1119, 1127 (La. 2003).

### F. Dismissal of Various Claims Made Against "All Defendants"

As set forth above, even after allowing Plaintiff leave to amend her complaint, she maintains Counts 4 and 5 for false arrest and excessive force against "all defendants" which would include D.A. Landry both individually and in his official capacity. There is no allegation, much less evidence, that D.A. Landy was ever at the scene of the protest, in any way participated, directly or indirectly, in the arrest of Plaintiff, much less in the way it was carried out. There is no articulated policy or any type of legal theory that would impute liability for these claims to D.A. Landry individually or in his official capacity. They are meritless and should be dismissed as to D.A. Landry in both his individual or official capacity.

### G. Supplemental Jurisdiction over the Remaining State-Law Claims

Having concluded that all of the plaintiff's federal-law claims against D.A. Landry in both his individual and official capacity should be dismissed, there is no federal question concerning D.A. Landry or the office of the District Attorney remaining before the court.  Although this fact alone does not divest the court of jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining

to exercise jurisdiction over the remaining state-law claims."[108]   Moreover, the general rule in this circuit is to dismiss state claims when the federal claims they supplement are dismissed.[109]   Therefore, this Court recommends the court decline to exercise its supplemental jurisdiction, and the plaintiff's remaining state-law claims asserted against D.A. Landry in his official capacity should be dismissed without prejudice.

### IV. The Claims Against Lt. Carstens

#### A. Qualified Immunity as to Lt. Carstens

Plaintiff alleges Lt. Carstens arrested her in retaliation for the exercise of her First Amendment right to free speech and Fourth Amendment right to be free from unreasonable search or seizure, at the behest of Mayor Guillory, Chief Morgan, and/or Sheriff Garber.[110]

Plaintiff's federal claims against Lt. Carstens are brought under 42 U.S.C. § 1983, which provides a remedy for violations of constitutional and federal law.[111] To state a claim under § 1983, Plaintiff must show: (1) a deprivation of a right secured by federal law, that (2) occurred under color of state law, and (3) was caused

---

[108]     *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).
[109]     *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  See, also, *Enochs v. Lampasas County*, 641 F.3d 155, 161-63 (5th Cir. 2011) ("The courts in this circuit must remain diligent in following the Supreme Court's almost fifty-year-old command that federal courts avoid needless decision of state law.").

[110]     FAC at ¶¶ 49-56.
[111]     *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016).

by a state actor.[112]  This Court has found there was no Constitutional violation under the First, Fourth or Fourteenth Amendment leading to the plaintiff's arrest and recommends dismissal of the claims § 1983 claims on that basis.  However, in the event the district court disagrees with that finding, Lt. Carstens pleads the defense of qualified immunity.[113]  Plaintiff denies that qualified immunity applies to Lt. Carstens' actions as alleged.[114]

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[115]  Qualified immunity is immunity from suit and, as such, is "effectively lost if a case is erroneously permitted to go to trial."[116]  Courts considering application of the doctrine of qualified immunity must ask whether the plaintiff has alleged facts which, if proven, would demonstrate the deprivation of a constitutional right and whether such right was "clearly established" at the time of the alleged deprivation.[117]  Courts are free to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

---

[112]    *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5ᵗʰ Cir. 2004).
[113]    Rec. Docs 41, 59.
[114]    Rec. Doc. 52-1 at pp. 11-16.
[115]    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[116]    *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).
[117]    *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) citing *Saucier v. Katz*, 533 U.S. 194 (

circumstances" presented by each case.[118]  Once qualified immunity is asserted as a defense, it becomes the plaintiff's burden to show the defense is inapplicable.[119]

Plaintiff alleges Lt. Carstens arrested her for violation of La. R.S. §§ 14:100.1 and 103, regarding obstruction of a public passage and disturbing the peace, without probable cause for such arrest.[120]  Plaintiff claims her arrest without probable cause violated her right to free speech and assembly under the First Amendment[121] and her right to be free from unreasonable search and seizure under the Fourth Amendment,[122] as well as her substantive and procedural due process rights under the Fourteenth Amendment.[123]  This Court disagrees for the reasons set forth above and concludes the second prong need not be addressed.  However, even if there was a Constitutional violation, Plaintiff cites to no clearly established law that would preclude Lt Carstens from effecting the arrest based on the historical factual background and the facts as they existed at the time of the arrest.

As indicated, Supreme Court precedent and Fifth Circuit jurisprudence support the contention that Plaintiff was engaged in the "unlawful activity" of targeted picketing which is not protected by the First Amendment.  Plaintiff refused

---

[118]    *Pearson v. Callahan*, 555 U.S. at 236.
[119]    *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).
[120]    FAC at ¶¶ 52-55, 114.
[121]    FAC at ¶¶ 10, 114.
[122]    FAC at ¶¶ 160-61.
[123]    FAC at ¶¶ 149-50.

to accede to the request by officers lawfully present to cease her activities in front of the Mayor's house. This request came as the gathering grew in number following Plaintiff's stated intention of providing the Mayor's personal address on social media to thousands of people was to make the Mayor uncomfortable. There is no law cited that suggests, much less clearly establishes, that once Plaintiff refused to cease, she was not subject to arrest for the crimes charged.

In summary, having determined that Plaintiff fails to allege the violation of a constitutional right, this Court does not need to reach the second prong of the analysis and finds Lt. Carstens is entitled to dismissal of Plaintiff's Federal and Louisiana free speech and due process claims against her in her individual capacity on that basis.  However, Lt. Carstens is also entitled to dismissal based on Plaintiff's failure to demonstrate the presence of any clearly established law which would vitiate the qualified immunity defense. Therefore, Plaintiff's claims should be dismissed for failure to state a claim for violation of Plaintiff's federal and Louisiana constitutional rights to free speech and due process.[124]

### F.  Claims against "Arresting Officers"

Plaintiff asserts a variety of claims against "Defendant Officers" which include "Arresting Officers", identified as John and Jane Does 1-10 in her amended

---

[124]     Counts 1, 2, and 5.  *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009) (qualified immunity not necessary when plaintiff fails to establish the violation of a constitutional right); *Hampton v. Oktibbeha Cnty. Sheriff Dep't.*, 480 F.3d 358, 363 (5th Cir. 2007).

complaint.  Despite having already been given an opportunity to amend, the counts in the amended complaint are ambiguous as to what conduct applies to whom because they are often lumped together or stated in the conjunctive. By footnote in Plaintiff's opposition to the pending motions, Plaintiff clarifies that Lt. Carstens is an "Arresting Officer."[125]  Plaintiff cites Paragraph 7 of the amended complaint as defining the term "Arresting Officer" and further asserts that this paragraph includes Lt. Carstens as an "Arresting Officer."

After careful review of these claims, this Court concludes that Plaintiff fails to state a claim for relief against Lt. Carstens as to all such claims.  Plaintiff does not allege any action by Lt. Carstens beyond that addressed above.  Specifically, Plaintiff fails to allege any involvement by Lt. Carstens in her transport, detention at a police station, or booking at LPCC.  The Court is not to give credence to unwarranted deductions of fact in the 12(b)(6) analysis. Given the absence of factual allegations against Lt. Carstens, the Court does not treat these claims as applying to Lt. Carstens and therefore, recommends they be dismissed.

### V. Notice to Louisiana Attorney General and certification under Fed. R. Civ. P. 5.1

Fed. R. Civ. P. 5.1 provides that a party who files a pleading calling into question the constitutionality of a federal or state statute must file a notice of

---

[125]      Response (Rec. Doc. 45) at p. 5, n. 1.

constitutional question stating the question and identifying the filing raising the question when the suit does not include as a party the state, one of its agencies, officers or employees.  A District Attorney's office is not an "arm of the state" for Eleventh Amendment purposes, thus the naming of the District Attorney as a defendant does not vitiate the need for notice under Rule 5.1.[126]

The court must certify the question to the Attorney General, who may intervene in the suit within sixty (60) days of the filing of notice of constitutional question or the court's certification of the challenge, whichever is earlier.[127]  Plaintiff asserts that she served Louisiana's Attorney General with a copy of the original complaint and notice of the constitutional question on September 2, 2021.[128]  To date, the Louisiana Attorney General has not intervened in the suit.

Although this Court concluded Plaintiff failed to show a violation of her First, Fourth or Fourteenth Amendment rights by application of La. R.S. §§ 14:100.1 or 103(A)(5), the undersigned nevertheless will recommend Rule 5.1 certification of Plaintiff's facial and as-applied challenges to these statutes based on remaining claims against other defendants and considering the findings of the United States Supreme Court in *Cox v. State of Louisiana*.[129]

---

[126]    *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999).
[127]    FRCP 5.1(c).
[128]    FAC at p. 8, n. 4.
[129]    379 U.S. 536 (1965) (reversing the Louisiana Supreme Court's prior ruling affirming conviction under La. R.S. §§ 14:100.1 and 103.1, as they were then composed, for protesting segregation in Baton Rouge, Louisiana based

## **Conclusion**

For the reasons discussed herein, the Court recommends:

- To the extent both movants contend the claims are barred by application of *Heck v. Humphrey,* the motions be DENIED;

- D.A. Landry's motion to dismiss be GRANTED as to all claims against him in his individual and official capacity under Federal law;

- D.A. Landry's motion to dismiss be GRANTED as to all of Plaintiff's individual capacity claims against him based on Louisiana law;

- The remaining official capacity claims against D.A. Landry under Louisiana law be DISMISSED WITHOUT PREJUDICE on the basis that the court declines to exercise supplemental jurisdiction over those claims;

- Lt. Carstens' motion to dismiss be GRANTED as to all claims brought against her in her individual capacity;

- That the district court certify the constitutional question as to whether La. R.S. §§ 14:100.1 and 103(A)(5) are unconstitutionally vague and/or overbroad facially and as applied, as restrictions that violate the First Amendment of the United States Constitution and Article I, Sections Seven and Nine of the Louisiana Constitution;

---

on findings that these state statutes, as applied, violated Cox's First and Fourteenth Amendment rights and additionally finding La. R.S. 103.1 was overly broad on its face and, therefore, unconstitutional).

- Plaintiff be ordered to amend her complaint again to specify the claims directed to each defendant not already dismissed by the Court after its judgment on the pending motions.  The undersigned specifically recommends that Plaintiff omit all non-essential background information and refine the content of the complaint to allege facts against the specific defendants pertaining to each remaining claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of June,

2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

44