# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| TARA FOGLEMAN-LAXEY, | § § § | CIVIL ACTION NO. 6:21-CV-03038 |
| *Plaintiff*, | § § | |
| v. | § § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| MAYOR GUILLORY, MAYOR-PRESIDENT OF THE CITY OF LAFAYETTE; LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; SCOTT MORGAN, INTERIM POLICE CHIEF OF THE LAFAYETTE POLICE DEPARTMENT; MARK GARBER, SHERIFF OF LAFAYETTE PARISH; DONALD LANDRY, DISTRICT ATTORNEY FOR THE 15TH JUDICIAL DISTRICT OF LOUISIANA; LIEUTENANT LISA CARSTENS; and POLICE OFFICER DOES 1 THROUGH 10, | § § § § § § § § § § § § § | MAGISTRATE JUDGE PATRICK J. HANNA  JURY TRIAL REQUESTED |
| *Defendants*. | § § | |

## PLAINTIFF'S LIMITED OBJECTION TO MAGISTRATE JUDGE PATRICK J. HANNA'S REPORT AND RECOMMENDATIONS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................... 1

II. LEGAL ANALYSIS ................................................................................................. 4

    A.    The Report fundamentally erred by deviating from the appropriate
        standard of review for Rule 12(b)(6) motions. ................................... 4

    B.    The Report erred by concluding that the BBQ Protest was not protected
        under the First Amendment and the Louisiana Constitution because there
        is no Louisiana law at issue that restricts residential picketing. ........................... 7

    C.    The Report erred by concluding that Lt. Carstens is entitled to qualified
        immunity Because Ms. Fogleman-Laxey sufficiently demonstrated the
        deprivation of constitutional rights and these rights were clearly
        established at the time of such deprivation. .......................................................... 12

        1.    The allegations in the FAC show that Lt. Carstens arrested Ms.
            Fogleman-Laxey without probable cause in violation of the Fourth
            Amendment. ........................................................................................ 13

            a.    The allegations in the FAC show that Lt. Carstens did not
                have probable cause to arrest Ms. Fogleman-Laxey for
                violation of La. R.S 14:100.1 because no objectively
                reasonable officer could have concluded that Ms.
                Fogleman-Laxey obstructed a public passage. ........................... 14

            b.    The allegations in the FAC show that Lt. Carstens did not
                have probable cause to arrest Ms. Fogleman-Laxey for
                violating La. R.S. 14:103 because no objectively reasonable
                officer could have concluded that Ms. Fogleman-Laxey
                disturbed the peace. ................................................................... 17

            c.    The Report disregards the FAC's well-pleaded allegations
                and instead applies an improper totality of the
                circumstances analysis to reach the incorrect conclusion
                that Lt. Carstens had probable cause to arrest Ms.
                Fogelman-Laxey under either statute. ......................................... 19

        2.    The allegations in the FAC show that Lt. Carstens arrested Ms.
            Fogleman-Laxey in retaliation for Ms. Fogleman-Laxey's
            constitutionally protected speech in violation of the First
            Amendment. ........................................................................................ 21

    D.    The Report erred by concluding that all claims against DA Landry should
        be dismissed because the FAC alleges sufficient facts to defeat absolute
        immunity and establish *Monell* lability under a *de facto* policy or practice. ....... 22

## TABLE OF CONTENTS
(continued)

**Page**

1.   The Report erred in finding that DA Landry is entitled to absolute prosecutorial immunity because DA Landry circumvented established procedures by bringing charges in the Fifteenth Judicial District Court. .......................................................................................... 23

2.   The Report erred in finding no *Monell* claim against the DA's Office. ............................................................................................................. 26

III. CONCLUSION ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arnold v. Williams,*
  979 F. 3d 262 (5th Cir. 2020) .................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................4

*Brian v. Patrick,*
  No. 15-541-JJB-EWD, 2016 WL 394002 (M.D. La. Feb. 1, 2016) .......................................14

*Brown v. Scott,*
  602 F.2d 791 (7th Cir. 1979), *aff'd sub nom. Carey*, 447 U.S. 455..........................................9

*Bustos v. Martini Club Inc.,*
  599 F.3d 458 (5th Cir. 2010) .................................................4

*Carey v. Brown,*
  447 U.S. 455 (1980).............................................................2, 9

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) .................................................15

*Craig v. Carter,*
  718 So.2d 1068 (La. App. 2d Cir. 1998) .............................17

*Davidson v. City of Stafford, Texas,*
  848 F. 3d 384 (5th Cir. 2017) .................................13, 14, 22

*Dean v. Byerley,*
  354 F.3d 540 (6th Cir. 2004) .................................................8, 10

*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018)...........................................................20

*Evett v. DETNTFF,*
  330 F.3d 681 (5th Cir. 2003) .................................13, 20

*Frisby v. Schultz,*
  487 U.S. 474 (1988)..............................................9, 10, 11

*Gitlow v. New York,*
  268 U.S. 652 (1925)..............................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Heaney v. Roberts*,
  846 F.3d 795 (5th Cir. 2017) ................................................13

*Herndon v. Lowry*,
  301 U.S. 242 (1937)................................................8

*Imbler v. Pachtman*,
  424 U.S. 409 (1976)................................................23

*Jamison v. State of Texas*,
  318 U.S. 413 (1943)................................................9

*Jones v. Parmley*,
  465 F. 3d 46 (2d Cir. 2006)................................................16

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................4

*Louisiana v. Barnard*,
  847 So.2d 99 (La.App.2 Cir. 5/14/03) ................................................16

*Lovelace v. Software Spectrum, Inc.*,
  78 F.3d 1015 (5th Cir.1996) ( ................................................15

*Mapp v. Ohio*,
  367 U.S. 643 (1961)................................................8

*N.A.A.C.P. v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)................................................8

*Occupy Columbia v. Haley*,
  738 F. 3d 107 (4th Cir. 2013) ................................................22

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986)................................................27

*Piotrowski v. City of Houston*,
  237 F. 3d 567 (5th Cir. 2001) ................................................27

*Singleton v. Cannizzaro*,
  956 F.3d 773 (5th Cir. 2020) ................................................23, 24

*Snyder* v. *Phelps*,
  562 U.S. 443 (2011)................................................7, 8, 10, 11

*State v. Champagne*,
  520 So.2d 447 (La. App. 5th Cir. 1988) ................................................17

# TABLE OF AUTHORITIES
## (continued)

Page

*State v. Chauvin*,
   945 So.2d 752 (La. App. 5th Cir. 2006) ...................................................17

*State v. Heck*,
   307 So.2d 332 (La. 1975) ............................................................................17

*State v. Jordan*,
   369 So.2d 1347 (La.1979) ...........................................................................17

*State v. Kinard*,
   105 So.3d 974 (La. App. 5 Cir. 11/27/12) .................................................16

*State v. Leban*,
   777 So.2d 591 (La. App. 4 Cir. 12/20/00) .................................................14

*State v. Lindsay*,
   388 So.2d 781 (La. 1980) ...............................................................17, 18, 19

*State v. Thomas*,
   829 So.2d 1137 (La. App. 3 Cir. 10/30/02) ...............................................16

*State v. White*,
   2010 WL 2179723 (La. App. 3 Cir. 6/2/10) ..............................................16

*State v. Woolverton*,
   474 So. 2d 1003 (La. App. 5th Cir. 1985) ...........................................17, 18

*Tompkins v. Cyr*,
   995 F. Supp. 664 (N.D. Tex. 1998) ...............................................10, 11, 12

*Turner v. Lieutenant Driver*,
   848 F.3d 678 (5th Cir. 2017) ...............................................................2, 8, 13

*U.S. v. Del Hierro-Vega*,
   760 F. App'x. 301 (5th Cir. 2019) ..............................................................20

*United States v. Grace*,
   461 U.S. 171 (1983)........................................................................................8

*United States v. Powell*,
   732 F.3d 361 (5th Cir. 2013) .................................................................13, 19

*United States v. Williams*,
   2016 WL 6469300 (M.D. La. 2016) ...........................................................16

*Webb v. Town of Saint Joseph*,
   925 F.3d 209 (5th Cir. 2019) .......................................................................27

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Statutes**

La. C. Cr. P. 61 ...........................................................................................................26

La. C. Cr. P. Art 701(B)(2) .........................................................................................24

La. R.S 14:100.1 ...........................................................................................14, 16, 21, 26

La. R.S. 14:103 ..........................................................................................................17, 21

La. R. S. 16:1(B) ..........................................................................................................26

Dallas, Texas Code § 31-34 ........................................................................................11

**Other Authorities**

U.S. Constitution First Amendment.............................................2, 3, 4, 7, 8, 9, 10, 11, 12, 21, 22, 24

U.S. Constitution Fourth Amendment ....................................................................3, 8, 13, 14, 21

U.S. Constitution Fourteenth Amendment ..................................................................3, 8, 9, 12

City-Parish Clerk of Court, 15th Judicial District,
   https://www2.lpclerk.com/departments/criminal.cfm .......................................24, 25

Lafayette Parish Clerk of Court website at
   https://www2.lpclerk.com/departments/criminal.cfm .........................................25

Louisiana Constitution Article I, Sections 7 and 9 ....................................................8, 12

Louisiana Constitution Article 5, Section 26 ..............................................................26

Federal Rule of Civil Procedure 12(b)........................................................................4, 7

NOW INTO COURT, through undersigned counsel, comes Plaintiff Tara Fogleman-Laxey, who files this Memorandum in Support of Plaintiff's Limited Objection to Magistrate Judge Patrick J. Hanna's Report and Recommendation (the "Report") (Dkt. No. 72). She incorporates by reference her Omnibus Memorandum in Opposition to Motions to Dismiss Filed by Donald Landry and Lisa Carstens ("Opposition to MTD") (Dkt. No. 52-1). For the reasons stated herein, the Court should decline to adopt the Report's granting of (1) District Attorney Donald Landry's ("DA Landry")[1] motion to dismiss all federal and state claims against him in his individual and official capacities, including those for which the court exercises supplemental jurisdiction, and (2) Lieutenant Lisa Carstens' ("Lt. Carstens") motion to dismiss all claims brought against her.[2] Ms. Fogleman-Laxey does not object to the Report's *Heck v. Humphrey's* ruling, certification of the constitutional question, or the order to amend the complaint.

## I. INTRODUCTION

This case centers on the defendants' abuse of their authority to punish Ms. Fogleman-Laxey for exercising her federal and state constitutional rights—including her right to free speech, to peacefully assemble, to petition her government, and to be free from unlawful search and seizure. On August 29, 2020, Ms. Fogleman-Laxey chose, as countless Americans have before her, to engage in a peaceful barbeque protest ("BBQ Protest") on a wide open public road, near the home of her elected official, Joshua Guillory, the Mayor-President ("Mayor") of the City-Parish of Lafayette, Louisiana. As a punishment for engaging in this constitutionally protected activity, the Mayor, along with the other Defendants, including Lt. Carstens and DA Landry, usurped and abused their authority by arresting Ms. Fogleman-Laxey without probable cause and subjecting her to a humiliating, painful, and unjustified detention followed by a prosecution on

---

[1] This includes sections II.B. III.A-.B, and III.D-.G of the Report.
[2] This includes sections II.B, IV.A, and IV.F of the Report.

trumped-up charges. Ms. Fogleman-Laxey's ordeal is detailed in her 66-page First Amended Complaint ("FAC") (containing numerous well-pleaded allegations, pictures, and videos) and the Opposition to the MTD.

The Report discounts the FAC's allegations and concludes that Ms. Fogleman-Laxey's claims against Lt. Carstens should be dismissed based on qualified immunity and those against DA Landry should be dismissed based on absolute immunity and *Monell.* In so doing, the Report errs in four fundamental ways. First, the Report breaks the motion to dismiss rule requiring courts to consider only those facts alleged in the complaint, which *must be taken* as true and viewed in a light most favorable to the plaintiff. For example, in describing the BBQ Protest, the Report ignores the FAC's allegations—supported by photos and video, showing that the BBQ was peaceful, never noisy, and never radical—in order to conclude, based on evidence introduced by DA Landry, that the BBQ Protest was "something quite different" than a peaceful protest. Other violations of the motion to dismiss rule permeate the Report. Thus, because the Report did not correctly apply the motion to dismiss rule, this Court should not adopt its decisions on the points challenged by Ms. Fogleman-Laxey.

Second, the Report wrongfully concludes that, even without a law prohibiting targeted residential picketing, the First Amendment never protects residential picketing directed at a public official's home. The Report's broad pronouncement on this point is directly at odds with binding precedent from the U.S. Supreme Court and Fifth Circuit holding the exact opposite: absent a narrowly-tailored time, place, and manner law prohibiting residential picketing, the right to protest on a public street in a residential neighborhood and in the front of a public official's home is fully protected by the First Amendment. *See, e.g., Carey v. Brown,* 447 U.S. 455, 460-61 (1980); *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 n.50 (5th Cir. 2017). As such, the Report's conclusion

otherwise and the dismissal of the First and Fourteenth Amendment claims against Lt. Carstens and DA Landry should not be adopted.

Third, the Report erred in finding no constitutional violation of clearly established law despite the lack of probable cause to arrest Ms. Fogleman-Laxey for obstructing a public passage and disturbing the peace (a Fourth Amendment violation), and for conducting such an arrest in retaliation for her BBQ Protest (a First Amendment violation). As to the former, under binding precedent, an arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment. Here, there was no probable cause to arrest Ms. Fogleman-Laxey for obstructing a public passage because, among other things, there was *no* actual obstruction of the road. Similarly, there was no probable cause to arrest her for disturbing the peace because, among other things, the protest was undisputedly peaceful and was not noisy or radical. As to the latter, under binding precedent, the right to be free from retaliatory arrest for exercising protected speech is also clearly established. Here, Ms. Fogleman-Laxey was arrested because she was engaged in First Amendment protected speech near the Mayor's home. As such, the Report's finding that Lt. Carstens is entitled to qualified immunity and the dismissal of the claims against Lt. Carstens should not be adopted.

Fourth, the Report incorrectly dismissed the claims against DA Landry in his personal capacity based on absolute prosecutorial immunity. DA Landry, however, is not entitled to absolute immunity because he usurped the City-Parish prosecutor's authority when he acted outside of established procedures in prosecuting Ms. Fogleman-Laxey in the 15th Judicial District Court. In addition, the Report erred in recommending the dismissal of *Monell* claims against the DA's Office because the FAC has sufficiently plead the necessary elements for municipal liability: First and Fourth Amendment violations, DA Landry's position as the final policymaker instituting

the single decision to prosecute Ms. Fogleman-Laxey as retaliation for the exercising of her First

Amendment rights, as well as the *de facto* policy and custom of arrests and prosecutions made

without probable cause and in retaliation for the exercise of free speech. As such, the Report's

dismissal of the claims against DA Landry should not be adopted.

## II. LEGAL ANALYSIS

### A.    THE REPORT FUNDAMENTALLY ERRED BY DEVIATING FROM THE APPROPRIATE STANDARD OF REVIEW FOR RULE 12(B)(6) MOTIONS.

Rule 12(b)(6) motions to dismiss are "viewed with disfavor and are *rarely granted*."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (emphasis added). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotations omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. at 678. When conducting its inquiry, a court *must accept* all well-pleaded factual

allegations as true and view each of the facts "*in the light most favorable to the plaintiff*." *Bustos

v. Martini Club Inc*., 599 F.3d 458, 461 (5th Cir. 2010) (emphasis added).

Applying this liberal pleading standard to § 1983 claims, a plaintiff must plead "two—and

only two—allegations": "First, the plaintiff must allege that some person has deprived [her] of a

federal right. Second, [she] must allege that the person who has deprived [her] of that right acted

under color of state or territorial law." *Arnold v. Williams*, 979 F. 3d 262, 266 (5th Cir. 2020)

(quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Ms. Fogleman-Laxey's 66-page FAC meets this liberal pleading standard. Yet, in direct

contradiction to the rules governing Rule 12(b) motions, the Report relies on facts *not* alleged in

the FAC (many of which *directly contradict* the allegations in the FAC), views the pleaded and

non-pleaded facts in the light most favorable to *defendants*, and *ignores or brushes aside* key facts from the FAC. Thus, the Report ignores the facts as alleged in the FAC—*which must be taken as true* at the motion to dismiss stage. Attached as <u>Appendix A</u> is a table addressing the disparities between each fact alleged in the FAC and the Report's view of the alleged facts.

The Report's violations of the legal standard abound. One such error is its description of the BBQ Protest. In the FAC, Ms. Fogleman-Laxey alleges, with corroborating video and photographic evidence, that her BBQ Protest on a public road was peaceful, never noisy, and never radical. (FAC ¶ 45). The BBQ Protest's purpose was to start a dialogue with the Mayor about issues directly affecting the Lafayette community. (*Id.* ¶ 39) From its inception to the time until after Ms. Fogleman-Laxey was arrested, the BBQ Protest included at most three people, including Ms. Fogleman-Laxey. (*Id.* ¶ 47) In fact, as alleged in the FAC, during many points of the BBQ Protest, the protestors were outnumbered by police officers and the Mayor's private security. (*Id.* at 19)

Despite these facts, the Report rejects Ms. Fogelman-Laxey's allegation that her BBQ Protest was, in fact, peaceful. (Report at 28). It does so even though no party disputes the peaceful nature of the BBQ Protest. (*See generally* Dkt. Nos. 40-1, 41-1). Nevertheless, by relying on a fact introduced by DA Landry—*i.e.,* the desire to make the Mayor "uncomfortable"—the Report recast the BBQ Protest as "something quite different" than a peaceful protest. (Report at 28-30). In five separate places, and contrary to the allegations in the FAC that the BBQ Protest's purpose was to initiate a dialogue with the Mayor about issues affecting racial justice and Lafayette, the Report recasts the purpose as to make that Mayor uncomfortable. (*Compare* FAC ¶¶ 39, 45 *with* Report at 3, 19, 28, 29, and 39). In doing so, the Report ignores the numerous allegations, photos, and video evidence showing that Ms. Fogleman-Laxey not only stated she came "in peace," sought to

"handle things in peace," and was not there to "be radical or noisy," but also acted in accordance with those statements. (*See, e.g.,* FAC ¶¶ 5, 45).

The Report also adds two new facts absent from the FAC: that the Mayor's family was in the home at the time of BBQ Protest and that they were "disturbed" by the BBQ Protest's "noise or exclamation in their presence and hearing with the intent of annoying them." (Report at 30). These new facts are directly rebutted by the FAC where Ms. Fogleman-Laxey alleges she *did not know* the Mayor's family was in the home at the time of BBQ Protest and *never sought* to target them in any way—and also alleges, with video evidence support, that the protest was peaceful, *not* noisy, and *not* radical. (FAC ¶¶ 45, 60).

The Report also relies on purported "facts" that directly contradict the FAC. For example, the Report claims that the police officers at the BBQ Protest were confronted with a gathering of 16-20 on-scene protestors and onlookers, (Report at 4), while the FAC alleges that only three protestors were present at the time Ms. Fogleman-Laxey was arrested. (FAC ¶ 47). And, in at least two different places, the Report asserts that Ms. Fogleman-Laxey refused to stop the protest at the request of officers, (Report at 30, 38-39), but that is not so. After Lt. Carstens agreed that Ms. Fogleman-Laxey was not breaking any laws, Ms. Fogleman-Laxey nevertheless agreed to move her BBQ pit to several other locations, including the back of her truck, sidewalk, median, and grass (FAC ¶ 51; FB Live Video at 13:00 and 14:15-14:55). After refusing to allow her to move her BBQ pit, Lt. Carstens placed Ms. Fogleman-Laxey under arrest. (*Id.* ¶¶ 51-52).

The Report also relies on irrelevant and separate "current events widely reported in the news media at the time" to ignore the facts of the BBQ Protest, as alleged in the FAC. (Report at 28). For example, the Report compares the BBQ Protest to "nationwide" protests of "varying

degrees of unrest and even violence against people and property."[3] (*Id.*) "Facts" derived from protests that occurred in other places, at other times, and with other protestors most certainly falls outside the facts in the FAC and have no place in considering motions to dismiss. Moreover, no party in this case argues that Ms. Fogleman-Laxey's BBQ Protest was violent or amounted to civil unrest. (*See generally* Dkt. Nos. 40-1, 41-1). And, no party disputes that the BBQ was peaceful. (*Id.*).

The Report's errors in describing the BBQ Protest are but some of the numerous times the Report improperly rejected Ms. Fogleman-Laxey's allegations in favor of non-pleaded or distorted facts. Each of these errors, individually and combined, affected the Report's view of the case and legal analysis. The Report's rejection of Ms. Fogleman-Laxey's allegations in favor of non-pleaded and distorted facts fundamentally undermined the required inquiry at the motion to dismiss stage. The standard of review is highly important at this stage, where the task is not to find facts and weigh the evidence, or even to predict who is likely to prevail. Instead, the pleadings stage is only intended to determine whether there is a plausible claim for relief. That standard was not correctly applied here in the Report.

**B.   THE REPORT ERRED BY CONCLUDING THAT THE BBQ PROTEST WAS NOT PROTECTED UNDER THE FIRST AMENDMENT AND THE LOUISIANA CONSTITUTION BECAUSE THERE IS NO LOUISIANA LAW AT ISSUE THAT RESTRICTS RESIDENTIAL PICKETING.**

The Report concludes that the First Amendment *never* protects targeted residential picketing directed at a public official's home, regardless of whether there is a law prohibiting said speech.[4] (Report at 19-20). After doing so, the Report dismisses Ms. Fogleman-Laxey's claims

---

[3] The Report erred by considering news media reporting of violent protests not alleged in the FAC. And even if they could be considered, the Report further erred by giving weight to those external circumstances, weighing the evidence as a fact finder, and presuming (without supporting evidence) the impact these events had on officers in this case.

[4] The Report also highlights Ms. Fogleman-Laxey's purported desire to make the Mayor uncomfortable as support for its position. (Report at 19). But that purported desire, even if true, is *inconsequential*—"speech cannot be restricted simply because it is upsetting or arouses contempt." *Snyder* v. *Phelps*, 562 U.S. 443, 458 (2011).

against DA Landry and Lt. Carstens under the First and Fourteenth Amendment[5] of the United States Constitution and Article I, Sections 7 and 9 of the Louisiana Constitution. (*Id.* at 20). Because the Report's conclusions are contrary to binding precedent, they must be rejected.

As a starting point, the Report's premise is fundamentally flawed—a person's First Amendment rights in public places "necessarily remain[] *unfettered* unless and until a reasonable restriction is imposed or in place." *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 n.50 (5th Cir. 2017) (emphasis added) (internal quotations omitted); *see also Dean v. Byerley*, 354 F.3d 540, 551 (6th Cir. 2004) (concluding "the First Amendment protects the right to engage in peaceful targeted residential picketing in the absence of a narrowly tailored time, place, or manner regulation"); *United States v. Grace*, 461 U.S. 171, 177 (1983) (explaining the government can only restrict free speech in public streets through reasonable, time, place, and manner regulations); *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 915 n.49 (1982) (explaining First Amendment rights are undisturbed when there are no narrowly tailored statutes restricting the protected activity); *Herndon v. Lowry*, 301 U.S. 242, 259 (1937) (holding a person can exercise his First Amendment rights "unless in so doing he violated some prohibition of a valid statute").

Here, because it is undisputed that *no* law restricted protesting in front of the Mayor's home or in a residential neighborhood, (Report at 18), the only question is whether Ms. Fogleman-Laxey's BBQ Protest constitutes First Amendment protected activity. Under binding precedent, the BBQ Protest was "entitled to 'special protection' under the First Amendment" because it occurred in "a public place on a matter of public concern," *Snyder*, 562 U.S. at 458—*namely,* the police shooting of Mr. Pellerin, police accountability, and racial justice, (FAC ¶¶ 39, 55). *See*

---

[5] The Fourteenth Amendment's due process clause incorporates the First and Fourth Amendments of the U.S. Constitution as applicable against states. *See Mapp v. Ohio*, 367 U.S. 643 (1961) (incorporating Fourth Amendment); *Gitlow v. New York*, 268 U.S. 652 (1925) (incorporating First Amendment).

*Carey,* 447 U.S. at 460 (holding that picketing in front of mayor's home on issues of school busing and racial integration "falls within the First Amendment's preserve"); *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (explaining that an "antipicketing ordinance operates at the core of the First Amendment by prohibiting appellees from engaging in picketing on an issue of public concern").

The fact that the BBQ Protest took place in a residential neighborhood and was directed towards the Mayor *does not* revoke the protection afforded by the First Amendment. Here, we need look no further than *Carey,* a case the Report relied on to support its conclusion that the BBQ Protest was not protected by the First Amendment.[6] In *Carey,* 14 people picketed on a public sidewalk in front of the home of Chicago's mayor to protest school busing and racial integration of schools. *Brown v. Scott*, 602 F.2d 791, 792 (7th Cir. 1979), *aff'd sub nom. Carey*, 447 U.S. 455. On reviewing the legality of the statute "prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods," the U.S. Supreme Court held that the anti-picketing statute "regulates expressive conduct that falls within the First Amendment's preserve." *Carey,* 447 U.S. at 460. The Court then invalidated the anti-picking statute as an unconstitutional infringement of the First Amendment because it was not "finely tailored to serve substantial state interests" and upheld the right to protest on a public sidewalk in front of the mayor's home. *See id.* at 461, 470.

Although the Report discusses and quotes from *Carey,* the Report's ultimate holding is fundamentally at odds with *Carey*: *Carey* holds that residential picketing in front of a public official's home is constitutionally protected under the First and Fourteenth Amendment and cannot be restricted without a constitutionally valid law restricting that picketing. *See Jamison v. State of Texas,* 318 U.S. 413, 416 (1943) ("[O]ne who is rightfully on a street which the state has left open

---

[6] The Report mentions a case it calls *Casey* after its discussion of *Carey.* Plaintiff understands *Casey* and *Carey* to be the same case.

to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion.").

*Dean* further clarifies that, absent a constitutionally valid law, residential picketing in front of a public official's home is protected by the First Amendment. In *Dean,* an applicant for the State Bar of Michigan and two hired individuals protested on a public street in front of the home of the Executive Director of the State Bar to publicize mistreatment by State Bar employees. 354 F.3d at 544. The Court flatly rejected the Executive Director's claim, like the Report here, that "targeted residential picketing is not constitutionally protected," holding that "Supreme Court precedent makes it *clear* that citizens have the constitutional right to use streets for assembly and communication" and "that right remains *unfettered* unless and until the government passes [appropriate] regulations." *Id.* at 550-51 (emphasis added). In other words, "the First Amendment protects the right to engage in peaceful targeted residential picketing in the absence of a narrowly tailored time, place, or manner regulation." *Id.*

The Report ignores these well-established legal principles and a lack of a law restricting residential picketing by relying on a footnote about the admission of evidence during a trial on tort liability in *Tompkins*. This footnote, the Report claims, renders picketing at a specific home "an unlawful activity" and not constitutionally protected by the First Amendment.[7] (Report at 19 (quoting *Tompkins,* 202 F.3d at HN 10, 780 n.4)). But the Report incorrectly reads the *Tompkins* footnote. In that footnote, the *Tompkins* court explained that, based on *Frisby,* "marching through a neighborhood is protected, but targeting and picketing a specific home is not." *Tompkins,* 202 F.3d at 780 n.4 (citing *Frisby,* 487 U.S. at 479-488).

---

[7] Tort liability is fundamentally different from determination of whether a restriction is allowed under the First Amendment. *Snyder*, 562 U.S. at 457 (2011) (noting anti-picketing funeral statute raises "very different questions from the tort verdict at issue in this case").

*Tompkins's* explanation of *Frisby* is only partially accurate—for *Frisby* made the marching versus home distinction while analyzing a city ordinance preventing residential picketing. *See* 487 U.S. at 482-83. Without such an ordinance, the First Amendment protects a person's right to protest in front of a residence—even when the owner is not a public official, as was the case in *Frisby* before the ordinance was passed. *See id.* at 476-77 (explaining that prior to the enforcement date of the anti-picketing ordinance on May 21, 1985, protestors "on at least six occasions between April 20, 1985, and May 20, 1985, for periods ranging from one to one and a half hours" protested outside doctor's home with groups that "varied from 11 to more than 40" people and no one was arrested). Properly understood, the footnote in *Tompkins* stands only for the proposition that, when a municipality passes a narrowly-tailored law banning picketing in front of a home, marching by the house is constitutionally protected whereas targeting and picketing at a specific home is not. *See Snyder,* 462 U.S. at 459-60 (explaining that *Frisby* upheld an "ordinance prohibiting picketing 'before or about' any individual's residence"). But that is not the situation in this case, as there was *no* picketing law on the books at the time of the BBQ Protest.

The Report also incorrectly claims that *Tompkins* "addressed the concept of targeted picketing where there was no ordinance or law banning it." (Report at 19). In *Tompkins,* a group of anti-abortion protestors picketed outside a doctor's home every single day "unabated for ten months" beginning in October 1992 and ending in July 1993. 202 F.3d at 775; *Tompkins v. Cyr,* 995 F. Supp. 664, 672 (N.D. Tex. 1998). While this protest was in the midst of its ten-month run, which the Report correctly notes was "far more egregious" than the BBQ Protest, the City of Dallas passed a law prohibiting residential picketing.[8] Dallas, Texas Code § 31-34 ("Picketing in

_____

[8] On July 18, 2022 at approximately 10:30 a.m., Kelley Drye & Warren LLP's librarian called the Dallas City Secretary (214-670-3738) to inquire about the date on which Dallas Ordinance 21667 was passed. The Secretary relayed that the earliest date she could see for the law was May 12, 1993. She also indicated that the Ordinance may have applied earlier than that date, but to conduct that research Plaintiff would need to file an open records request. Given the

Residential Areas"). Although the *Tompkins* court fails to mention this law, it nevertheless was in place and applicable at the time of the picketing. Despite this law, the protestors continued targeting the doctor's home for nearly two more months.[9] Moreover, in addition to the anti-picketing ordinance, a preliminary injunction was issued "limiting the frequency, duration, and nature of the picketing at [the doctor's] home." *Tompkins*, 995 F. Supp. at 674. Here, there was *no* law or injunction prohibiting the BBQ Protest.

In short, because *no* law prevented Ms. Fogleman-Laxey from protesting on a public street near the Mayor's home, the First Amendment fully protected her BBQ Protest. As such, this Court should allow Ms. Fogleman-Laxey's First and Fourteenth Amendment and Article I, Sections 7 and 9 claims to proceed.

**C.     THE REPORT ERRED BY CONCLUDING THAT LT. CARSTENS IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE MS. FOGLEMAN-LAXEY SUFFICIENTLY DEMONSTRATED THE DEPRIVATION OF CONSTITUTIONAL RIGHTS AND THESE RIGHTS WERE CLEARLY ESTABLISHED AT THE TIME OF SUCH DEPRIVATION.**

The Report concludes that Lt. Carsten is entitled to qualified immunity because there was no violation of Ms. Fogleman-Laxey's First, Fourth, or Fourteenth Amendment rights and, even if there were such violations, they were not clearly established at the time of her arrest. (Report at 38). After doing so, the Report dismisses all federal and state claims against Lt. Carstens. (*Id.* at 39). However, the Report's conclusions are not only contrary to binding precedent, but also inconsistent with the alleged facts, which must be taken as true.

Under the Fifth Circuit standard, government officials are afforded the protection of qualified immunity for wrongful acts *only* when they reasonably could have believed that their

_____

limited time to file the objection in this case, Plaintiff has not filed said request. If necessary, Ms. Fogleman-Laxey is prepared to submit a sworn statement from Kelley Drye & Warren's attesting to these facts.
[9] Notably, at no point, either before or after the residential picketing statute was passed, were the protestors arrested for residential picketing in from of the doctor's home. *See generally Tompkins,* 202 F.3d 770; *Tompkins v. Cyr*, 995 F. Supp. 664.

conduct was not violating the law. *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). To assess whether a government official has waived his right to qualified immunity, Courts employ a two-prong test: (1) whether the plaintiff has alleged facts sufficient to demonstrate the deprivation of a constitutional right, and (2) whether such right was clearly established at the time of the alleged deprivation. *Turner*, 848 F.3d at 685. If both these prongs are satisfied, then qualified immunity does not shield the public official.

1.  <u>The allegations in the FAC show that Lt. Carstens arrested Ms. Fogleman-Laxey without probable cause in violation of the Fourth Amendment.</u>

The Fourth Amendment protects against "unreasonable searches and seizures" without "probable cause." U.S. Const. amend. IV. Probable cause for a warrantless arrest exists when the facts known to the arresting officer "'are sufficient to occasion a person of reasonable prudence to believe an offense has been committed.'" *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir.1988)). Probable cause "is determined on the basis of facts available to the officer at the time of the arrest." *Id.* When determining whether there was probable cause for an arrest, courts "examine the totality of the circumstances." *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013). But while law enforcement personnel "may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Evett*, 330 F.3d at 668 (cleaned up).

In the Fifth Circuit, "an arrest without probable cause violates *clearly established law* defining an individual's rights under the Fourth Amendment." *Davidson v. City of Stafford, Texas*, 848 F. 3d 384, 391 (5th Cir. 2017) (emphasis added). For example, in *Davidson,* the officers violated the protestor's Fourth Amendment right because there was "no actual probable cause for the arrest and the officers were objectively unreasonable in believing that there was probable cause" when the protestor did not render the public passageway impassable. *Id.* at 393. And, the

"arrest without probable cause violate[d] *clearly established law* defining an individual's rights under the Fourth Amendment." *Id.* at 391 (emphasis added). In short, when the complaint establishes a lack of probable cause for an arrest, the qualified immunity defense is negated. *See Brian v. Patrick*, No. 15-541-JJB-EWD, 2016 WL 394002, at *3 (M.D. La. Feb. 1, 2016).

<div style="margin-left:2em">

a.   <u>The allegations in the FAC show that Lt. Carstens did not have probable cause to arrest Ms. Fogleman-Laxey for violation of La. R.S 14:100.1 because no objectively reasonable officer could have concluded that Ms. Fogleman-Laxey obstructed a public passag</u>e.

</div>

Under the obstruction of public passages statue, "no person shall willfully obstruct the free, convenient, and normal use of any public sidewalk, street, highway, bridge, alley, road or other passageway . . . by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein." La. R.S 14:100.1. Case law discussing this statute makes clear that, in order for probable cause to exist for an arrest, there must be some facts alleged to demonstrate a willful physical obstruction of vehicular or pedestrian traffic. *See, e.g., State v. Leban*, 777 So.2d 591 (La. App. 4 Cir. 12/20/00) (finding no probable cause when an officer did not observe anything amounting to a willful obstruction). This case law is supported by Judge Bouillion's pronouncement, as alleged in the FAC, which was common knowledge to officers in Lafayette, that there can be *no* violation of the obstruction of a public passage "when vehicles or persons can traverse the road." (FAC ¶¶ 7, 53).[10]

In light of the above precedent, the facts alleged in the FAC show that no reasonable officer could conclude there was probable cause to arrest Ms. Fogleman-Laxey under the obstructing a public passage statute. The FAC alleges, as supported by pictures on pages 4, 17, and 19, that (i) her small BBQ pit was placed directly behind her parked vehicle; (ii) the pit was completely

---

[10] This knowledge is based on information provided by a local officer whose identity Ms. Fogleman-Laxey has kept private to prevent retaliation by Defendants. (FAC ¶ 1 n.1).

out of the way of vehicle and pedestrian traffic; and (iii) numerous vehicles and persons easily traversed the street during the time her pit was allegedly obstructing a public passageway. (FAC ¶ 43). The FAC explains that—at the start of the BBQ Protest and mere moments before Ms. Fogleman-Laxey's arrest—both Lt. Cartens and Carlos Harvin (an agent of the Lafayette Consolidated Government ("LCG"), including the Lafayette Police Department and Mayor) agreed that Ms. Fogleman-Laxey's BBQ Protest was legal and not a violation of any law. (FAC ¶¶ 47, 51). Indeed, nowhere do the facts suggest that Ms. Fogleman-Laxey or her BBQ pit obstructed any passageway in any way whatsoever before or at the time of arrest.

The FAC also explained that the arrest was made on the direct order of Chief Morgan, who was not on the scene, in retaliation for her constitutionally protected speech. (FAC ¶ 48). Since Ms. Fogleman-Laxey made this allegation in the FAC, newly produced evidence confirms that allegation the FAC—*namely*, Ms. Fogleman-Laxey was arrested based on Chief Morgan's *direct* order (and not based on what the officers perceived on the scene):[11, 12]

> *While Lt. Carstens and I were speaking with Ms. Laxey I received a telephone call from Cpl. M. Borel. He advised that me that Chief of Police S. Morgan had relayed that Ms. Laxey be arrested. I was able to later advise Lt. Carsten's of this information and she indicated that Ms. Laxey be arrested. I then advised Cpl. Dugas to place Ms. Laxey under arrest.*

Chief Morgan, in a press conference after Ms. Fogleman-Laxey's arrest, confirmed that she was not arrested for obstructing a public passage, stating she was arrested because "the roadway is not a place for BBQ pits and hanging out on tailgates and things like that . . . you wanna put em on the sidewalk, you can't come hang out in front of people's houses and do those types of things." (FAC ¶ 59) (quoting KATC News, Guillory on protests: "Lafayette is under control,"

---

[11] A court may consider material outside the complaint if the materials "are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996) (finding court can consider SEC filings not attached to the complaint when determining whether plaintiff states a valid securities fraud claim).

[12] Supplemental Statement of Sgt. Corey Menard (8/29/20).

KATC (Aug. 29, 2020)). Of note, Ms. Fogleman-Laxey and another protestor offered to move the BBQ pit to other locations, including the back of her truck and sidewalk, but the police officers refused to allow it. (FAC ¶ 51, FB Live Video at 13:00 and 14:15-14:55).

The Report rejects these well-pleaded facts by concluding that there was probable cause for the arrest under the obstruction of a public passage because a "total obstruction of passage is not required for arrest under La. R.S 14:100.1." (Report at 29). The Report, however, ignores that in every single case cited in support of the contention that "total obstruction . . . is not required" there was at least *some* observable obstruction.[13] While it may be true that *total* obstruction of a passageway is not required for arrest, none of the cases cited by the Report support a finding of probable cause when *no* obstruction occurs—which is exactly what happened in this case.

The Report further considers "the historical factual background that existed at that time" to conclude that there was a "probability or substantial chance of a violation of La. R.S. 14:100.1." (Report at 29-30). The Report fails to support that proposition. Nevertheless, mere possibility of future violation does not amount to probable cause. *See Jones v. Parmley,* 465 F. 3d 46, 56 (2d Cir. 2006) (finding, based on U.S. Supreme Court precedent, that the "police may not interfere with orderly, nonviolent protests merely because they disagree with the content of speech or because they *simply fear possible disorder*" (emphasis added)).

Accordingly, based on the facts as alleged in the FAC and applicable case law, no reasonable officer could have concluded at the time of arrest that Ms. Fogleman-Laxey had violated (or was in the process of violating) La. R.S 14:100.1. And, at the time of arrest, the right

---

[13] *United States v. Williams*, 2016 WL 6469300 (M.D. La. 2016) (vehicle backing into driveway); *State v. Kinard*, 105 So.3d 974, 975 (La. App. 5 Cir. 11/27/12) (presence of vehicle in the middle of the street); *State v. White*, 2010 WL 2179723 (La. App. 3 Cir. 6/2/10) (defendant leaning into an illegally parked vehicle); *State v. Thomas*, 829 So.2d 1137 (La. App. 3 Cir. 10/30/02) (truck idling in the street with passenger door open); *Louisiana v. Barnard*, 847 So.2d 99 (La.App.2 Cir. 5/14/03) (stopping in the middle of the street to let passengers out).

to be free from arrest absent probable cause was clearly established. As such, Lt. Carstens is not entitled to qualified immunity.

     b.  <u>The allegations in the FAC show that Lt. Carstens did not have probable cause to arrest Ms. Fogleman-Laxey for violating La. R.S. 14:103 because no objectively reasonable officer could have concluded that Ms. Fogleman-Laxey disturbed the peace.</u>

   The disturbing the peace statute prohibits certain activities that would "foreseeably disturb or alarm the public," including "[a]ddressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call[ing] him by any offensive or derisive name, or mak[ing] any noise or exclamation in his presence and hearing with the intent [to] deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty," or "[h]olding of any unlawful assembly." La. R.S. 14:103(A)(2), (5). Binding precedent has clearly established that, in order for this statute to apply, there must be a specific intent to deride, offend, or annoy another person *and* the conduct must be violent or boisterous in itself or provocative in the sense that it induces a foreseeable physical disturbance. For example, in *Garner v. State*, a student at Southern University and six of her colleagues were charged with disturbing the peace under La. R.S. 14:103 when they sat at a lunch counter reserved for white patrons. 368 U.S. 157, 160 (1961). In holding that the evidence was insufficient to support that defendant had disturbed the peace, the Court held that the statute encompasses "only conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance."[14] *Id.* at 167. In *State v. Woolverton*, an appellate court in Louisiana clarified that because "the First and Fourteenth Amendments to the U.S. Constitution require great care in the

---

[14] Many Louisiana cases accept the *Garner* interpretation that the statute encompasses "only conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance." See *State v. Heck*, 307 So.2d 332 (La. 1975); *State v. Jordan*, 369 So.2d 1347, 1350 (La.1979); *State v. Lindsay*, 388 So.2d 781 (La. 1980); *State v. Champagne*, 520 So.2d 447 (La. App. 5th Cir. 1988); *Craig v. Carter*, 718 So.2d 1068 (La. App. 2d Cir. 1998); *State v. Chauvin*, 945 So.2d 752 (La. App. 5th Cir. 2006).

regulation of speech[,] [o]nly 'fighting words-those which by their very utterance inflict injury and tend to incite an immediate breach of the peace,' are punishable." *State v. Woolverton*, 474 So. 2d 1003, 1004 (La. App. 5th Cir. 1985) (quoting *White v. Morris*, 345 So.2d 461 (La.1977)). In *Woolverton,* the appellate court held there was no case to arrest the defendant under the disturbing the peace statute, even though the defendant raised his voice at the officers and he failed to heed the officers' request to quiet down. *Id.* at 1006.

In light of this precedent and under the facts alleged in the FAC, there was no probable cause to arrest Ms. Fogleman-Laxey for disturbing the peace when she engaged in the peaceful BBQ Protest. As a starting point, no party disputes that the BBQ Protest was peaceful or that no permit was required for the BBQ Protest. Here, Ms. Fogleman-Laxey peacefully grilled hotdogs and hamburgers along with two other protestors and Carlos Harvin (an agent of the LCG and Mayor). (FAC ¶ 47). She did not seek to be violent, boisterous, or provocative. Instead, as alleged in the FAC, Ms. Fogleman-Laxey sought to be peaceful and respectful, stating "it is important that we handle things in peace," "we come in peace," and "we are not here to be radical or noisy." (FAC ¶ 45).

Nevertheless, the Report rejects precedent and the FAC's well-pleaded allegations in concluding that there was probable cause for the arrest under the statute because it was "foreseeable that the Mayor's family would be disturbed by any member of the growing group immediately in front of their home (virtually or otherwise) making any noise or exclamation in their presence and hearing with the intent of annoying them." (Report at 30). But, again, there is no evidence to support such an allegation and, even if there was, this assertion falls short of punishable conduct under the statute. The Report compares *State v. Stowe* to *State v. Lindsay* to support its probable cause finding, but little explanation is provided. (Report at 30). In *Stowe*, the

defendant was visibly intoxicated and walking down the middle of a public highway with a severe injury, resulting in a highway traffic jam; the court found that this "foreseeably disturbed or alarmed the public." 635 So.2d 168, 172 n.3 (La. 1994). Comparatively, in *Lindsay*, the court found no probable cause to arrest the defendant who was visibly intoxicated on his own property when he verbally confronted and shouted obscenities at officers who came to the property to investigate a reported domestic disturbance. 388 So.2d 781, 782-83 (La. 1980). Neither *Stowe* nor *Lindsay,* however, are analogous to Ms. Fogleman-Laxey's case because she was not intoxicated, shouting, or causing a traffic jam.

Accordingly, based on the facts as alleged in the FAC and applicable case law, no reasonable officer could have concluded at the time of arrest that Ms. Fogleman-Laxey was disturbing the peace. And, at the time of arrest, the right to be free from arrest absent probable cause was clearly established. As such, Lt. Carstens is not entitled to qualified immunity.

        c.    <u>The Report disregards the FAC's well-pleaded allegations and instead applies an improper totality of the circumstances analysis to reach the incorrect conclusion that Lt. Carstens had probable cause to arrest Ms. Fogleman-Laxey under either statute.</u>

As described above, the well-pleaded facts and case law make clear that there was no probable cause to arrest Ms. Fogleman-Laxey under either statute. Nevertheless, the Report relies on inapposite law and irrelevant, non-pleaded facts to support its probable cause finding. Although courts "examine the totality of the circumstances" when determining whether there was probable cause for an arrest, *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013), the Report adopts a broad and unbounded totality of the circumstances definition that considers "surrounding events" (such as the "varying degrees of unrest and even violence . . . on a nearly nationwide basis") rather than focusing on the specific events at the scene leading up to the moment of Ms. Fogleman-Laxey's arrest. (Report at 28-29).

<div align="center">19</div>

Under binding precedent, the totality of the circumstances approach requires courts to consider the facts as a whole, rather than taking them one by one in a "divide-and-conquer" approach. *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). In considering the totality of circumstances to determine probable cause, courts examine "the events leading up to the arrest" and focus on what a reasonable officer would have believed at the moment the arrest was made. *U.S. v. Del Hierro-Vega*, 760 F. App'x. 301, 304 (5th Cir. 2019). Such factors include the collective knowledge of all police involved in the investigation and whether the officer was forced to make a split-second decision. *Evett*, 330 F.3d at 688. The Fifth Circuit warns that considering the totality of the circumstances does not mean an officer may disregard facts tending to dissipate probable cause, such as the source of the information upon which probable cause is based. *Id*.

The Report claims that the totality of the circumstances includes consideration of the surrounding events, public sentiment, and the air of unrest among citizens by citing *Wesby* and *Flores v. City of Palacios*. (Report at 29). These cases, however, do not support such a contention. In *Wesby*, the U.S. Supreme Court held the lower court erred by applying a "divide-and-conquer" analysis and viewing "each fact in isolation rather than as a factor in the totality of the circumstances." 138 S. Ct. at 588. In that case, however, the lower court viewed the facts actually occurring at the scene of the crime in isolation of each other. *Id*. Nowhere does *Wesby* suggest that considering the "totality of the circumstances" reasonably includes the public sentiment generally or the alleged air of unrest amongst citizens, especially when neither is present at the scene of the arrest. (*See* Report at 29). *Flores* clarifies that courts must consider the facts occurring "*at the moment of arrest*" when assessing the totality of the circumstances. 381 F.3d 391, 402 (5th Cir. 2004) (emphasis added). Here, nothing *at the moment of arrest* suggested that the peaceful BBQ Protest would be anything other than peaceful or would develop into a violent riot.

20

The approach taken in these cases contradicts the Report's approach of placing emphasis on facts that occurred in another place and time, such as nationwide protests, or presumed facts about what might happen in the future—such as making assumptions about how Ms. Fogleman-Laxey's peaceful (and mostly virtual) protest would develop. Furthermore, none of these facts were alleged in the FAC. And, just as important, in using this totality of the circumstances approach, the Report ignored facts tending to dissipate probable cause, as explained in § C(1)(a)-(b) above, including but not limited to (i) Lt. Carstens' and Mr. Harvin's statements that Ms. Fogleman-Laxey was not violating any laws in the events prior to or at the time of the arrest; (ii) Ms. Fogleman-Laxey's attempts to comply with the officers vague requests; (iii) Ms. Fogleman-Laxey's prior consulting with legal professionals regarding the lawfulness of her actions; (iv) the undisputed peaceful nature and lack of emergency at the protest; and (v) the lack of an obstruction. (FAC ¶¶ 39, 45, 47, 51).

After properly assessing of the plain language of La. R.S. 14:100.1 and La. R.S. 14:103, reviewing the precedent relating to the interpretation of probable cause under each statute, and accepting Ms. Fogleman-Laxey's well-pleaded facts, it is clear that Lt. Carstens violated Ms. Fogleman-Laxey's Fourth Amendment right to be free of unreasonable search and seizure. At the very least, factual disputes remain making it impossible to rule definitively on probable cause at the motion to dismiss stage. As such, Lt. Carstens is not entitled to qualified immunity.

    2.    <u>The allegations in the FAC show that Lt. Carstens arrested Ms. Fogleman-Laxey in retaliation for Ms. Fogleman-Laxey's constitutionally protected speech in violation of the First Amendment.</u>

The First Amendment protects "the freedom of speech," "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to be free from arrests in retaliation for protected speech is a clearly established right.

*See Davidson*, 848 F.3d at 391 (holding that protestors "are also protected under the First Amendment from retaliatory actions by government officials" unless "an officer has probable cause to seize that individual."); *Occupy Columbia v. Haley*, 738 F. 3d 107, 124-25 (4th Cir. 2013) (holding that violation of First Amendment right of protestors is a "clearly established right" for purposes of defeating claim of qualified immunity, absent a valid time, place, and manner restriction).

As explained above in § B, Ms. Fogleman-Laxey was engaged in First Amendment protected speech during the BBQ Protest, as she was protesting on a matter of public concern on a public street. No law prohibited her protest or required that a permit be issued prior to the protest. As such, the First Amendment fully protected her BBQ Protest. And, as explained above, that protection was not forfeited and there was no cause to arrest her under either statute because there was no probable cause to arrest Ms. Fogleman-Laxey, as Chief Morgan admitted when he ordered Lt. Carstens to arrest Ms. Fogleman-Laxey for "hang[ing] out in front of [Mayor's] house[]." (*See* FAC ¶ 51). ). Chief Morgan's admission underscores that Ms. Fogelman-Laxey was arrested in relation for her protected speech Thus, Lt. Carstens is not entitled to qualified immunity for arresting Ms. Fogleman-Laxey.

**D.   THE REPORT ERRED BY CONCLUDING THAT ALL CLAIMS AGAINST DA LANDRY SHOULD BE DISMISSED BECAUSE THE FAC ALLEGES SUFFICIENT FACTS TO DEFEAT ABSOLUTE IMMUNITY AND ESTABLISH *MONELL* LABILITY UNDER A *DE FACTO* POLICY OR PRACTICE.**

The Report erred in two respects in connection with the claims against DA Landry. First, the Report recommended the dismissal of the claims against DA Landry in his individual capacity, finding that absolute immunity nullified the claims.  As explained below and in the Opposition to MTD, absolute immunity does not attach to DA Landry because he circumvented established prosecutorial procedures and acted without color of authority. Second, the Report recommends the

dismissal of the *Monell* claim against the Office of the District Attorney. However, the FAC pleads sufficient facts to establish a *de facto* policy or practice of prosecution in retaliation for protected political speech, as well as DA Landry's role as the final policymaker in bringing the misdemeanor charges.

1.    The Report erred in finding that DA Landry is entitled to absolute prosecutorial immunity because DA Landry circumvented established procedures by bringing charges in the Fifteenth Judicial District Court.

The Report errs by recommending the dismissal of all claims against DA Landry based on absolute prosecutorial immunity. (Report at 23-24). Absolute immunity, however, only attaches when a prosecutor "act[s] within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). When a prosecutor performs "functions other than their quasi-judicial functions of initiating prosecutions and presenting the State's case," or takes actions to "intentionally avoid[] the judicial process," absolute immunity does not attach. *Singleton v. Cannizzaro*, 956 F.3d 773, 780, 784 (5th Cir. 2020) (cleaned up) (holding that by using fake subpoenas, the defendants intentionally avoided the judicial process required by Louisiana law and, therefore, the creation and use of the fake subpoenas fell "outside the judicial process").

Under controlling precedent, and pivotal to this case, courts are to take "a 'functional approach' to absolute immunity that 'emphasize[s] that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Singleton*, 956 F.3d at 779 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Under this approach, DA Landry has to show that his actions were taken in preparation "for the initiation of

judicial proceedings or for trial, and which occur in the course of [his] role as an advocate for the State." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).[15]

As noted in the Opposition to MTD, DA Landry is not entitled to absolute immunity for two reasons. First, DA Landry's actions fell outside the judicial process and his role as an advocate for the State when he failed to follow established procedures and brought misdemeanor charges against Ms. Fogleman-Laxey in the 15th Judicial District Court, actions that are: (a) within the purview of the City-Parish Prosecutor *not* the District Attorney; and (b) should be pursued in city courts *not* district courts.[16] (*See* Opposition to MTD at 19). Thus, DA Landry acted "without color of authority," and is unable to meet his "burden of showing that such immunity is justified for the function in question." (*Id.* at 18). Not only were DA Landry's actions taken outside of normal procedures, they were not taken at the time of Ms. Fogleman-Laxey's unlawful detention, but rather five months later—the day after Ms. Fogleman-Laxey again exercised her First Amendment rights during an Acadiana Patriots public meeting on January 28, 2021. (FAC at 29-30).

DA Landry's actions here are similar to those reviewed in *Snell v. Tunnell,* where the court concluded there was *no* absolute immunity. In *Snell v. Tunnell,* the court considered whether absolute immunity should attach to a state attorney who, contrary to established procedures requiring action by the police or district attorney, circumvented the process by directly filing an application for conditional protective custody over children with the district court. 920 F.2d 673, 693-95 (10th Circuit 1990). The *Snell* court found that such action was not entitled to absolute prosecutorial immunity because: (i) the "normal procedure" required that the type of applications at issue be handled by either the police or the district attorney (the statutory scheme was "not

---

[15] DA Landry's five-month delay in bringing charges violated the Louisiana speedy trial provision, which required the filing of formal charges within ninety days. *See* La. Code Crim. P. Art 701(B)(2).
[16] The Lafayette Parish Clerk of Court website makes clear that "[m]isdemeanor charges are handled in the municipal courts." *See* City-Parish Clerk of Court, 15th Judicial District, https://www2.lpclerk.com/departments/criminal.cfm.

entirely clear," and allowed a DHS attorney to submit such an application in other situations); (ii) the pertinent statutory scheme had not "envision[ed] an end-run by DHS to override the prosecutorial discretion exercised by the offices of the [DA];" and (iii) the "purpose of absolute immunity would [have been] ill-served by granting it in cases when the defendant acts without colorable authority." *Id.* at 695-96.

The same reasoning applies here because DA Landry acted outside normal prosecutorial authority and procedure. As in *Snell*, DA Landry sidestepped the normal procedures governing misdemeanor charges such as obstruction of a public passage and disturbing the peace, which are usually within the authority of the city prosecutor, not the district attorney.  *See* City-Parish Clerk of Court, 15th Judicial District,  https://www2.lpclerk.com/departments/criminal.cfm, ("Misdemeanor charges are handled in the municipal courts, if such occurrence is within their city limits[.]"). As noted in the Opposition to MTD, charges of obstruction of a public passage and disturbing the peace have been brought in Lafayette City Court in past cases, but that was not done here. (Opposition to MTD at 19).

Second, DA Landry, by admission of his office[17] lacks the authority to prosecute misdemeanor traffic offenses where the arresting agency is the police. (Opposition to MTD at 20). Even if he could prosecute such an offense, the misdemeanor charges must be prosecuted in city court because they occurred within Lafayette City limits. *See* Lafayette Parish Clerk of Court website at  https://www2.lpclerk.com/departments/criminal.cfm.  Here, the Police arrested Ms. Fogleman-Laxey for a misdemeanor (and later added another) within the Lafayette City limits. (FAC ¶¶ 50-54). Both misdemeanors were traffic-related misdemeanors. *Id.* As such, DA Landry

---

[17]  *See*  District Attorney for the 15th Judicial Court, Traffic Tickets webpage, http://districtattorney15thjdc.org/prosecution/traffic-tickets/ ("Lafayette City Court prosecutes traffic tickets and misdemeanor traffic crimes investigated by the . . . Lafayette City Police Department.").

had no authority to prosecute Ms. Fogleman-Laxey or to bring these charges the 15th Judicial District Court. (Opposition to MTD at 20); *see* La. Rev. Stat. §§ 14.100.1 (criminalizing, among other things, obstructing a public sidewalk or street); 14:103 (criminalizing, among other things, speech or an unlawful assembly on a street).

The Report recognized these shortcomings but nonetheless excuses DA Landry for overstepping his authority and pursuing charges in an improper manner by citing the "broad discretion regarding criminal prosecutions" found in the Louisiana Constitution Art. 5, Sec. 26; La. C. Cr. P. 61; and La. R. S. 16:1(B). (Report at 23). This justification is circular. (Opposition to MTD at 20-21). These constitutional, statutory, and procedural provisions only protect authorized acts. The problem is that DA Landry acted in an unauthorized manner: he usurped the City-Parish Prosecutor's authority to charge and prosecute misdemeanor traffic violations and bypassed the correct forum when he chose to not prosecute in municipal court. (Opposition to MTD at 21). The Report also ignores that the charges were filed in retaliation against Ms. Foglemna-Laxey at the behest of the Mayor—*i.e.*, filed a single day after she exercised her right to free speech in January of 2021 during a meeting where she questioned the Mayor's COVID-19 policy. (FAC ¶¶ 15, 80).

At bottom, DA Landry acted without color of authority and improperly took over the City Prosecutor's authority and discretion when he decided to bring charges and prosecute Ms. Fogleman-Laxey in the 15th Judicial District Court. Accordingly, DA Landry is not entitled to absolute prosecutorial immunity.

2.      The Report erred in finding no *Monell* claim against the DA's Office.

Ms. Fogleman-Laxey further objects to the finding that she has not sufficiently alleged a *Monell* claim against DA Landry. As explained in the FAC, DA Landry—the final decision-maker with respect to criminal offenses in the 15th Judicial District of Louisiana—filed formal charges against Ms. Fogleman-Laxey because she exercised her constitutionally-protected rights near the

26

Mayor's house during the BBQ protest and/or during the Acadiana Patriots meeting. (FAC ¶ 167).

To establish liability under *Monell*, Ms. Fogleman-Laxey must demonstrate (1) the deprivation of a federally-protected right whose "moving force" is (2) an official policy (or custom) (3) of which a policymaker can be charged with actual or constructive knowledge. *Piotrowski v. City of Houston,* 237 F. 3d 567, 578 (5th Cir. 2001). The FAC shows all three elements are present in this case. First, with respect to the first prong, and as addressed more fully above, Ms. Fogleman-Laxey has successfully demonstrated that she was engaged in constitutionally protected conduct during the BBQ Protest and when she questioned the Mayor about his COVID-19 polices at a public meeting of the Acadiana Patriots group on January 28, 2021.

Second, with respect to the second prong, there are five types of "official policies" that satisfy the *Monell* standard: (1) formal policies; (2) *de facto* policies; (3) failure to train and/or failure to supervise; (4) single decision by a final policymaker; and (5) ratification of a subordinate's unconstitutional act. *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Ms. Fogleman-Laxey has successfully pleaded that a single decision— *i.e.*, the decision to file charges against her for obstructing a public passageway and disturbing the peace—by a final policymaker—*i.e.*, DA Landry—constitutes an "official policy" for purposes of the *Monell* standard for municipal liability. (FAC ¶ 167). DA Landry is authorized to decide the goals with respect to prosecution of alleged crimes in the 15th Judicial District of Louisiana and is authorized to devise the means of achieving those goals. *See* La. Cr. P. § 61; *Webb v. Town of Saint Joseph,* 925 F.3d 209 (5th Cir. 2019).

Not only is DA Landry the "final policymaker" with respect to the unlawful action at issue, his decision to prosecute Ms. Fogleman-Laxey satisfies the standards for single decisions that

constitute "official policies" under *Monell*. In *Board of Commissioners of Bryan County v. Brown*, the U.S. Supreme Court addressed when liability attaches for a policymaker's single decision. The Court made clear that, when "seeking to establish municipal liability on the theory that a facially lawful municipal action . . . has led an employee to violate a plaintiff's rights[,] [the plaintiff] must demonstrate that the municipal action was not simply negligent, but was taken with 'deliberate indifference' as to its known or obvious consequences." 520 U.S. 397, 407 (1997). Applying that standard here, Ms. Fogleman-Laxey has successfully demonstrated that DA Landry's decision to file charges against her, even if it was a facially lawful act, ultimately violated her constitutionally-protected rights. Specifically, as explained in the FAC, Ms. Fogleman-Laxey received no word about her arrest for nearly five months after the arrest, until the day after her interaction with the Mayor at the Acadiana Patriots group public meeting. (FAC ¶¶ 78-80). It is no coincidence that DA Landry formally filed charges against Ms. Fogleman-Laxey the very next day. (FAC ¶ 81). He filed the charges for no other reason than the Mayor had had enough of Ms. Fogelman-Laxey.

As the chief prosecutor for the 15th Judicial District of Louisiana, DA Landry acted with deliberate indifference towards the known or obvious consequences of the filing of formal charges against Ms. Fogleman-Laxey for alleged violations that did not take place. The fact that the charges against Ms. Fogleman-Laxey were dropped at a hearing scheduled a mere 11 days after the charges were filed is highly indicative of the fact that DA Landry lacked any basis on which to successfully prosecute Ms. Fogleman-Laxey. Moreover, DA Landry's actions taken after the Acadiana Patriot's meeting are the result of pressure/insistence from the Mayor and an attempt to scare, harass, shame, and intimidate Ms. Fogleman-Laxey into silence and to prevent her and others from exercising their constitutionally-protected rights.

Third, with respect to the third prong, it is clear that the "official policy" at issue is a single

28

decision by DA Landry, as he is the final policymaker with respect to prosecution of criminal offenses in the City-Parish of Lafayette, he not only knew of said policy but also authored it.

Accordingly, Ms. Fogleman-Laxey sufficiently pleads a *Monell* claim against DA Landry for retaliating against her for engaging in protected speech at her peaceful BBQ Protest and at the Acadiana Patriot's group public meeting on January 28, 2021. Moreover, the FAC sufficiently pleads and supports a finding on a motion to dismiss that the DA has and follows a *de facto* policy prosecuting arrests made without probable cause and in retaliation for exercising free speech.[18] (Opposition to MTD at 22). Thus, the Court should not adopt the Report's decision to dismiss the *Monell* claims.

### III. CONCLUSION

For the reasons stated above, Ms. Fogleman-Laxey respectfully requests that this Court decline to adopt the Report's granting of (1) District Attorney Donald Landry's ("DA Landry") motion to dismiss all federal and state claims against him in his individual and official capacities, including those for which the federal court exercises supplemental jurisdiction, and (2) Lieutenant Lisa Carstens' ("Lt. Carstens") motion to dismiss all claims brought against her in her individual capacity. This Court should accordingly deny the motions to dismiss filed by DA Landry (Dkt. No. 40) and Lt. Carstens (Dkt. No. 41).

---

[18] Ms. Fogleman-Laxey sufficiently pleads a *de facto* policy and custom of prosecuting arrests made without probable cause and in *retaliation for the exercise of constitutionally protected rights*. (*See* FAC ¶ 91; Opposition to MTD at 22). Ms. Fogleman-Laxey cited at least one other instance known to her where DA Landry pursued a baseless prosecution over an individual who made a satirical post on Facebook. (FAC ¶ 91; Opposition to MTD at 22 n.13). The Report improperly narrows the *de facto* policy she alleges as a "history of participating in the use of prosecutions to charge otherwise peaceful protestors." (Report at 25-26). As noted above, Ms. Fogleman-Laxey alleges the DA has a *de facto* practice of pursuing prosecution in retaliation for the exercise of free speech, which includes retaliation against peaceful protests, public statements through news interviews and social media, Facebook posts, and appearing at public forums to question government officials.

Dated:  July 29, 2022

Respectfully submitted,

E. BRIDGET WHEELER

*/s/ E. Bridget Wheeler*
E. Bridget Wheeler
LA Bar No. 37546
Nora Ahmed
New York Bar No. 5092374
ACLU Foundation of Louisiana
1340 Poydras St., Ste. 2160
New Orleans, Louisiana 70112
Telephone: 504.522.0628
Facsimile: 504.613.5611
bwheeler@laaclu.org
nahmed@laaclu.org

MILLER NASH LLP

*/s/ Fabio Dworschak*
Fabio C. Dworschak
Texas Bar No. 24098694
Lane R. Conrad
Washington Bar No. 59287
2801 Alaskan Way, Ste. 300
Seattle, WA 98121
Telephone: 206.777.7413
Facsimile: 206.340.9599
Fabio.Dworschak@MillerNash.com
Lane.Conrad@MillerNash.com

KELLEY DRYE & WARREN LLP

Nancy A. Yanochik
Texas Bar No. 01293000
515 Post Oak Boulevard, Ste. 900
Telephone: 713.355.5000
Facsimile:  713.355.50001
nyanochik@kelleydrye.com
Marisa A. Lorenzo
Vermont Bar No. 5884
Anne-Marie Mitchell
Louisiana Bar No. 34329
Malavika "Molly" Rao
New York Bar No. 5366018

30

Luis Pena-Navarro
New York Bar No. 5875034
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: 212.808.7800
Facsimile: 212.808.7897
mlorenzo@kelleydrye.com
amitchell@kelleydrye.com
mrao@kelleydrye.com
LPena-Navarro@KelleyDrye.com

Kaelyne Yumul Wietelman
Virginia Bar No. 95060
Washington Harbour
3050 K Street NW, Ste. 400
Washington, DC 20007
Telephone: 202.342.8478
Facsimile: 202.342.8451
kwietelman@kelleydrye.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on July 29, 2022, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all

participating counsel of record.

*/s/ Fabio Dworschak*
Fabio C. Dworschak